Michael HAWN and Brian Rauck,
Appellant–Plaintiff and Defendant
Below, Respectively,

v.

Rebecca PADGETT and Lisa Ball,
Appellee–Defendants.

Michael Fleming, Frank Partipilo, the State of Indiana, and the Department of Natural Resources, Non–Active Parties On Appeal.

No. 39A01–9202–CV–38.

Court of Appeals of Indiana,
First District.

Sept. 9, 1992.

John B. Drummy, Kightlinger & Gray, Indianapolis, for Brian Rauck.

Edwin S. Sedwick, Sedwick & Sedwick, Jeffersonville, for Michael Hawn.

Peter J. Sewell, Segal and Shanks, Jeffersonville, for Rebecca Padgett.

Samuel E. Day, Barbara W. Gernert, Wyatt, Tarrant, Combs & Orbison, New Albany, for Lisa Ball.

BAKER, Judge.

Plaintiff-appellant Michael Hawn (Hawn) initiated a negligence action against defendant-appellees Rebecca Padgett (Rebecca) and Lisa Ball (Lisa) to recover for personal injuries he sustained while asleep in the back of a pick-up truck driven and wrecked by Scott Fleming (Scott). Hawn alleged Rebecca and Lisa negligently allowed Scott, an intoxicated minor, to drive the truck after abandoning their efforts to prevent Scott from driving while intoxicated. Rebecca and Lisa filed motions for summary judgment which the trial court granted on the basis that neither owed a duty to Hawn. Hawn challenges this ruling.

We affirm.

## STATEMENT OF FACTS [1]

On May 14, 1988, Rebecca and Lisa were camping at Deam Lake State Park in Borden, Indiana. Michael Fleming, Frank Partipilo and Hawn were at the campsite next to Rebecca and Lisa. Although Rebecca and Lisa had not arranged in advance to meet anyone at the campground, they were acquaintances of the three men, and the group shared a picnic table at Rebecca and Lisa's campsite until approximately midnight. Throughout the evening, the three men drank beer from a pony keg located inside their tent.

At approximately 1:00 a.m., Scott, the younger brother of Michael Fleming, arrived at the campsite with Jerome Schaefer and Brian Rauck. These three, all minors, had been drinking and Scott had passed out in the back seat of the car. Michael Fleming removed his brother from the car, put him on a lawn chair and covered him with a blanket. Sometime between 3:00 and 5:00, a.m., and after taking a valium, Hawn set up a cot in the back of the pickup truck and went to sleep. Scott and Michael Fleming's father owned the pickup truck, and Michael Fleming had permission to drive the vehicle that evening. Michael Fleming left the keys to the truck in the ignition throughout the entire evening.

1. The facts in this case were previously before this court in *Rauck v. Hawn* (1990), Ind.App., 564 N.E.2d 334, *trans. denied.,* wherein plaintiff sought recovery for alleged violations of statute proscribing the furnishing of alcoholic beverages to minors.

After Hawn got into the back of the truck, only Scott, Rebecca and Lisa remained awake. Scott asked the girls for a cigarette, but neither of the girls had any. Scott then stated he was going to drive his father's truck to purchase some. Rebecca and Lisa acknowledge Scott was too intoxicated to drive and admit taking the keys to the truck to prevent him from doing so. The girls also fed Scott and tried to dissuade him from driving as they walked him around the area.

When they returned to the campsite, Scott angrily demanded the keys. Rebecca and Lisa refused and took the keys with them into their tent. Scott continued his demands, threatening the girls and eventually physically assaulting Lisa. In response to Scott's anger, the girls threw the keys out of the tent. Scott found the keys and, with Hawn still asleep in the pickup's bed, left for the store. Hawn suffered personal injuries when Scott drove the truck into a tree.

## DISCUSSION AND DECISION

### A. Standard of Review

■ When reviewing a grant of summary judgment, we apply the same standards as the trial court, and examine all pleadings, admissions, answers to interrogatories, depositions, and affidavits filed with the court in the light most favorable to the party opposing the summary judgment motion. *Moore v. Sitzmark Corp.* (1990), Ind.App., 555 N.E.2d 1305, 1306–07. Summary judgment is appropriate only when no genuine issues of material fact exist and when the moving party is entitled to judgment as a matter of law. *Id.* at 1307. When a defendant is the moving party, it is entitled to summary judgment as a matter of law if it can demonstrate that either the undisputed material facts negate at least one element of the plaintiff's claim, or if it raises a valid affirmative defense which bars the plaintiff's claim. *Id.* If a defendant cannot make one of these showings, summary judgment is inappropriate. *Id.*

### B. Existence of Duty

■ Hawn's action against Rebecca and Lisa sounds in negligence. To recover on a negligence theory, a plaintiff must establish three elements: (1) a duty on the part of the defendant to conform her conduct to a standard of care arising from her relationship with the plaintiff, (2) a failure of the defendant to conform her conduct to the requisite standard of care required by the relationship, and (3) an injury to the plaintiff proximately caused by the breach. *Webb v. Jarvis* (1991), Ind., 575 N.E.2d 992, 995. Imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. *Id.* at 997. Absent a duty, however, there can be no breach and no recovery under a negligence theory. *Stephenson v. Ledbetter* (1992), Ind., 596 N.E.2d 1369, 1371. Here, we need consider only the first element relating to the existence of a duty.

"Whether a defendant owes a duty of care to a plaintiff is a question of law for the court to decide." *Id.; Gariup Construction Co., Inc. v. Foster* (1988), Ind., 519 N.E.2d 1224, 1227; *Miller v. Griesel* (1974), 261 Ind. 604, 611, 308 N.E.2d 701, 706. "The duty to exercise care for the safety of another arises as a matter of law out of some relation existing between the parties, and it is the province of the court to determine whether such a relation gives rise to such duty." *Neal v. Homebuilder's, Inc.* (1952), 232 Ind. 160, 169, 111 N.E.2d 280, 285.

■ Hawn claims the undisputed facts demonstrate Rebecca and Lisa assumed a duty to prevent Scott from driving while intoxicated because the girls' gratuitous intervention gave rise to a special relationship when one did not otherwise exist. Rebecca and Lisa maintain the undisputed facts reveal they did not assume a duty of care to either Scott or Hawn.

■ The negligence of Rebecca and Lisa, if any, is properly characterized as nonfeasance, a failure to act, because they allegedly failed in their duty to prevent Scott from driving while intoxicated. Before we examine whether any duty arose, we note

that unless a plaintiff shows an affirmative act of misconduct by a defendant, negligence arising from nonfeasance must be premised on a special relationship between the parties. *Lather v. Berg* (1988), Ind. App., 519 N.E.2d 755, 759.

When addressing the duty to control the conduct of others, Indiana courts generally follow the principles set forth in the *Restatement (Second) of the Law on Torts. See Sports, Inc. v. Gilbert* (1982), Ind.App., 431 N.E.2d 534, *trans. denied.* The basic principle of this duty is stated as follows:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

*Restatement of the Law on Torts* Sec. 315 (2d ed. 1965).

In *Lather, supra,* our court examined a factual scenario which parallels this case. Our court affirmed a summary judgment entered in favor of teenage defendants who unsuccessfully attempted to prevent their intoxicated friend, Murphy, who had been drinking whiskey and smoking marijuana at a party at a friend's house throughout the evening, from driving by taking possession of his car keys. When Murphy tried to leave, his friends refused to hand over his keys. Murphy argued with his friends and became increasingly abusive. Finally, his friends relented and threw the keys at him and told him to leave. Murphy later collided with an Indiana State Police Officer who was killed in the accident.

The widow of the deceased officer brought suit against all of the individuals at the party on various theories, including a claim that two of the individuals at the party negligently performed a gratuitously assumed duty to protect her husband. The court stated a duty may be imposed upon one who assumes to act for another if it is apparent that the actor has specifically un-

dertaken to perform the task that he is charged with having performed negligently. *Id.* at 766. The court stated:

> An actor is liable for his negligent performance if he has undertaken to perform a legal duty owed by the other to the third person *on behalf of* and *in lieu of* that other. Liability does not arise in the situation when "one undertakes to perform functions coordinate to—or even duplicative of—activities imposed on another by a legal duty, but rather the situation in which one *actually undertakes to perform for the other the legal duty itself.*

*Id.* (original emphasis).

Summary judgment was appropriate on behalf of Murphy's friends because the court determined the act of taking the keys from Murphy and then relinquishing them did not establish they had gratuitously assumed a duty to prevent Murphy from driving. *Id.*

Our court in *Sports, Inc.* similarly addressed the duty to detain an intoxicated motorist. In *Sports, Inc., supra,* the Gilberts brought a personal injury and wrongful death lawsuit against the owner and operator of a race track alleging the track negligently failed to detain an intoxicated patron who later caused a serious accident. This court addressed at length whether the track owed any duty to the third party victims of the automobile accident, and stated:

> In all of the cases imposing liability for the failure to control the conduct of a third party, there are similar factors supporting the imposition of a duty. There is a person in need of special supervision or protection (i.e. child, drunkard, business invitee) from someone who is in a superior position to provide it (parent, supplier of alcohol, business owner, hospital). This dependency is part of the special relationship described by the Restatement (Second) of Torts sec. 315 (1965). The other part of this special relationship is the right to intervene or control the actions of a third person. If

Sports had no right to control Riggs, its conduct cannot constitute negligence.

*Sports, Inc., supra,* at 538.

In this case, the facts establish Rebecca and Lisa were merely acquaintances of Scott and Hawn. Rebecca and Lisa were not charged with their supervision or protection, and had no right to control their actions. They did not supply Scott or Hawn with alcohol or other drugs. No special relationship arose between them. Rebecca and Lisa therefore did not assume a duty to control Scott and cannot face liability for breach of that duty. Similarly, Rebecca and Lisa owed no duty of care to Hawn directly, again because no special relationship existed. Indiana courts have shown great reluctance to require an individual to take any action to control a third party when there is no special relationship between them. *Sports, Inc., supra,* at 538. Without a special relationship, there was no duty owed by Rebecca and Lisa to control either Scott or Hawn, and Rebecca and Lisa cannot be liable to Hawn for failing to prevent Scott from driving while intoxicated.[2]

Applying the law to the undisputed facts, we find the court was correct in entering summary judgment in favor of Rebecca and Lisa. The judgment is affirmed.

ROBERTSON and SHIELDS, JJ., concur.

**2.** The severity of our nation's drunk driving problem is apparent. In passing, we observe that courts should be reluctant to extend liability to those who gratuitously attempt to prevent intoxicated individuals from driving. A finding of liability in this case would encourage others to take no action rather than incur the risk of liability for failing to successfully control an intoxicated motorist.