926 N.E.2d 515 (2010)
Jerry Coleman BUCHANAN, by his Father and Guardian, Odell BUCHANAN, Appellant-Plaintiff,
v.
Candice L. VOWELL, Shannon Vowell, BGC Entertainment, Inc., d/b/a Brad's Gold Club, and 3551 Lafayette Road Corp. d/b/a Brad's Gold Club, Appellees-Defendants.
No. 49A02-0909-CV-873.
Court of Appeals of Indiana.
May 12, 2010.
*517 James H. Young, Edward R. Hannon, Indianapolis, IN, Attorneys for Appellant.
Mark S. Alderfer, Peter P. Ten Eyck, Indianapolis, IN, Attorneys for Appellees.

OPINION
BARTEAU, Senior Judge.

STATEMENT OF THE CASE
Plaintiff-Appellant Jerry Coleman Buchanan ("Jerry"), by his father and guardian, Odell Buchanan brings this interlocutory appeal of the trial court's dismissal of his amended complaint for damages against Defendant-Appellee Shannon Vowell ("Shannon"). We reverse and remand.

ISSUE
Jerry raises two issues for our review, which we consolidate and restate as: Whether the trial court abused its discretion in determining that Buchanan's amended complaint against Shannon failed to state a claim upon which relief could be granted.
On cross-appeal, Shannon raises one issue for our review, which we restate as: Whether the trial court abused its discretion in granting Buchanan's motion to file a belated motion to certify its interlocutory order for appeal. For purposes of judicial economy, we will address this issue before we turn to Jerry's issue.

FACTS AND PROCEDURAL HISTORY
The following facts were pled in the amended complaint. During the early morning hours of July 29, 2007, Jerry was a pedestrian walking westbound near the edge of the eastbound lane of Kessler Boulevard close to its intersection with Ditch Road in Marion County. At that same time, Defendant Candice Vowell ("Candice") was driving her vehicle eastbound on Kessler Boulevard and struck Jerry, throwing him on the hood of her car and into the windshield. Jerry suffered permanent brain damage and fractures to various bones.
Prior to the accident, Candice had, during her hours of employment or immediately thereafter, consumed sufficient alcohol to become intoxicated. The alcohol was provided by Candice and Shannon's employer, Brad's Gold Club. Candice and Shannon, who is Candice's mother, determined that rather than call a cab or leave Candice's car at Brad's Gold Club, they would traverse the Marion County streets with Candice leading and Shannon following. At the time of the accident, Shannon was following Candice in a separate vehicle, *518 and was engaging Candice in conversation on a cellular telephone.
In his amended complaint, Jerry alleged, among other things, that at the time of the accident Shannon knew that Candice was operating her vehicle while intoxicated and knew or should have known that talking on her cell phone would further impair or distract Candice, making her even more dangerous to other persons using the streets. Jerry further alleged that Shannon "negligently made the affirmative, conscious effort to call Candice, distracting her from maintaining a proper lookout." (Appellant's App. at 27). Jerry noted that Candice and Shannon elected to leave the scene of the accident, "leaving Jerry in his wounded and unconscious states to fend for himself." (Appellant's App. at 28).
Jerry filed his amended complaint alleging that the negligence of Candice, Shannon, and Brad's Gold Club resulted in physical and emotional injuries, as well as significantly impairing or eliminating his ability to earn income to support himself and his daughter. Jerry alleged that his claim against Shannon was viable pursuant to Restatement (Second) of Torts §§ 324(a) and 319. Shannon filed a motion for dismissal pursuant to Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted, which the trial court granted. The trial court then granted Jerry's belated motion to certify the interlocutory order for appeal, and this court subsequently accepted jurisdiction.

DISCUSSION AND DECISION

I. PROPRIETY OF THE GRANT OF THE BELATED MOTION
Shannon contends that the trial court abused its discretion in granting Jerry's belated motion to certify the interlocutory order for appeal. Shannon notes that we are not bound by the trial court's determination on the issue of certification. State v. Foy, 862 N.E.2d 1219, 1224 (Ind. Ct.App.2007), trans. denied. However, we will reverse the trial court's decision only for an abuse of discretion, which exists when the trial court's decision is clearly against the logic and effects of the facts and circumstances before the trial court or the reasonable and probable deductions to be drawn therefrom. Northwest Towing & Recovery v. State, 919 N.E.2d 601 (Ind. Ct.App.2010).
Pursuant to Appellate Rule 14(B)(1)(a), a party generally must bring a motion requesting certification of an interlocutory order within thirty days of the date of the interlocutory order. However, a trial court may permit a belated motion for good cause. Id.; Foy, id. When a trial court grants a belated motion and certifies the appeal, it shall set forth the basis for its finding of good cause. Id.
Here, the trial court found there was good cause because of a confluence of events: (1) Jerry's counsel was in the middle of a medical malpractice jury trial at the time the trial court's order was received; (2) counsel's legal assistant began her maternity leave at the same time; (3) the trial court's order was not received by Jerry's counsel until well into the thirty day deadline for filing the motion to certify the interlocutory order; and (4) the deadline for filing a motion to certify was not placed on counsel's calendar. The trial court further found that "these facts combined constitute inadvertence and excusable neglect." (Appellant's App. at 70).
Shannon acknowledges that there is a paucity of cases discussing "good cause" within the meaning of App.R. 14(B)(1)(a). However, Shannon cites Foy for the proposition that good cause includes mistake in calculation. 862 N.E.2d at 1224. Shannon argues that because the trial court's finding *519 of good cause was not based on the Foy rationale, the trial court abused its discretion.
We were not exploring the length and breadth of "good cause" in Foy. We were merely determining whether "mistake in calculation" was within the parameters of the term, and it was not our intention to set "mistake in calculation" as the sole circumstance upon which a finding of "good cause" can be made. The circumstances of each case should be examined by the trial court, and under the rather unique convergence of circumstances in this case, we cannot say that the trial court abused its discretion in finding good cause.

II. PROPRIETY OF DISMISSAL
Jerry contends that the trial court abused its discretion in dismissing his complaint for failure to state a claim upon which relief may be granted. Shannon's motion to dismiss for failure to state a claim tested the legal sufficiency of Jerry's complaint, not the facts supporting the claim. See Babes Showclub, Jaba, Inc. v. Lair, 918 N.E.2d 308, 310 (Ind.2009). Our review of the trial court's grant of the motion is de novo. Id. When reviewing a ruling on a motion to dismiss, we view the pleadings in the light most favorable to the nonmoving party, with every reasonable inference construed in the nonmovant's favor. Id. It is well settled that a complaint may not be dismissed for failure to state a claim upon which relief can be granted, unless "it appears to a certainty on the face of the complaint that the complaining party is not entitled to any relief." McQueen v. Fayette County School Corp., 711 N.E.2d 62, 65 (Ind.Ct.App.1999), trans. denied. (Emphasis supplied). The court must only look to the complaint, and well-pleaded material must be taken as admitted. Id.
Under notice pleading, a plaintiff need only plead the operative facts involved in the litigation. Id. Accordingly, a complaint is sufficient "if it states any set of allegations, no matter how unartfully pleaded, upon which the trial court could have granted relief." Id. We view motions to dismiss for failure to state a claim with disfavor because such motions undermine the policy of deciding causes of action on their merits. Id. We will not affirm a dismissal under T.R. 12(B)(6) unless it is apparent that the facts alleged in the challenged pleading "are incapable of supporting relief under any set of circumstances." Id.
Here, the crux of Jerry's amended complaint is that Shannon engaged in a negligent activity with Candice that was the proximate result of Jerry's injuries. The amended complaint alleges that Shannon gratuitously undertook a duty to control Candice's driving, an act that necessarily impacted third parties who shared the road with Shannon and Candice. The amended complaint also alleges that Shannon acted in concert with Candice in an activity that resulted in his injuries. The amended complaint further notes that Shannon's cellular communication with Candice negligently distracted an intoxicated driver.
The parties principally argue about whether Shannon gratuitously undertook a duty to protect Jerry from the drunken Candice. Accordingly, we begin our analysis by looking at the concept of a gratuitous undertaking.[1]
*520 In Hawn v. Padgett, 598 N.E.2d 630 (Ind.Ct.App.1992), the defendants were camping and noticed that fellow camper Fleming was intoxicated and that he wanted to drive a truck to go get cigarettes. The defendants originally took the keys from Fleming, but he became belligerent, and they relented by throwing the keys back to him. Fleming then proceeded to drive the truck into a tree, injuring a third party, Hawn, who was trying to sleep off his intoxication in the back of the truck. After Hawn sued the defendants, this court examined whether the defendants had gratuitously assumed a duty to Hawn by taking Fleming's keys.
We first noted that a plaintiff seeking to recover on a negligence theory must establish three elements: (1) a duty on the part of the defendant to conform his conduct to a standard of care arising from his relationship with the plaintiff; (2) a failure of the defendant to conform his conduct to the requisite standard of care required by the relationship; and (3) an injury to the plaintiff proximately caused by the breach. Id. at 632 (citing Webb v. Jarvis, 575 N.E.2d 992, 995 (Ind.1991)). We then noted that imposition of a duty is limited to those instances where a reasonably foreseeable victim is injured by a reasonably foreseeable harm. Id. We further noted that absent a duty, there can be no breach and no recovery under a negligence theory. Id. Whether a defendant owes a duty of care to a plaintiff is a question of law for a court to decide. Id.
We discussed Lather v. Berg, 519 N.E.2d 755 (Ind.Ct.App.1988) and Sports, Inc. v. Gilbert, 431 N.E.2d 534 (Ind.Ct. App.1982), trans. denied.[2] We then held as a general rule under the gratuitous undertaking concept, a person other than the driver is not liable for damages caused by the negligent acts of the driver unless that person has a special relationship that gives him or her the right to control the vehicle. Hawn, 598 N.E.2d at 633-34. In a footnote, we explained the wisdom of these "gratuitous undertaking" cases:
The severity of our nation's drunk driving problem is apparent. In passing, we observe that courts should be reluctant to extend liability to those who gratuitously attempt to prevent intoxicated individuals from driving. A finding of liability in this case would encourage others to take no action rather than incur the risk of liability for failing to successfully control an intoxicated motorist.
598 N.E.2d at 634 n. 2.
Jerry contends that his case goes beyond Hawn and the cases cited therein because the pleadings show that Shannon entered into a joint agreement with Candice, and this agreement ultimately resulted in activity that caused his injuries. Thus, he argues that Shannon went beyond the gratuitous undertakings described above. First, we note that this is not a case where *521 a person tried to prevent an intoxicated driver from driving; indeed, it is a case where a person assisted the intoxicated in driving. Second, we note that others have held that gratuitous undertakings concerning drivers may result in liability to a party other than the one who injured the third party. See Cowart v. Grimaldi, 46 Conn.Supp. 248, 746 A.2d 833 (Conn.Super.1997) (holding that a motion to strike was improper where defendant assisted a drunk minor in his negligence by driving the drunk minor to his car); see also, Claxton v. Hutton, 615 N.E.2d 471, 474 (Ind.Ct.App.1993) (holding that summary judgment was improper because there was a question of fact pertaining to whether a motorist's gratuitous signal to pass was negligent); Thelen v. Spilman, 251 Minn. 89, 86 N.W.2d 700 (1957) (holding that "[a] driver who, though under no legal duty to do so, voluntarily undertakes to signal a following driver that it is safe to pass is liable in damages for all reasonably foreseeable consequences if in giving the signal he does not exercise reasonable care for the safety of others"). Jerry's allegations and asserted facts show that Shannon went beyond the actions of the defendants in Hawn and related cases.[3] Accordingly, Jerry should be given the opportunity to engage in discovery and develop his case.
In addition, Jerry may show that Shannon is liable for Candice's negligent acts if Shannon is found to be acting in concert with Candice. Restatement (Second) of Torts § 876 is relevant here, and it provides that a person is liable for tortious conduct of another if she:
(a) does a tortious act in concert with the other or pursuant to a common design with [her], or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct [herself], or
(c) gives substantial assistance to the other in accomplishing a tortious result and [her] own conduct, separately considered, constitutes a breach of duty to the third person.
Pursuant to this language, a person will be held liable for the injuries that flow from her participation in a joint concerted tortious activity, if that activity was the proximate cause of the plaintiff's injuries. Although Indiana cases have not addressed the issue before us under Restatement § 876, Illinois cases have addressed the use of the Restatement provision in similar circumstances. In Clausen v. Carroll, 291 Ill.App.3d 530, 225 Ill.Dec. 692, 684 N.E.2d 167, 171 (1997), the court held that all participants in a drag race may be held jointly liable when a third party is injured by one race participant. More importantly, in Sanke v. Bechina, 216 Ill. App.3d 962, 160 Ill.Dec. 258, 576 N.E.2d 1212 (1991), appeal denied, 142 Ill.2d 665, 164 Ill.Dec. 928, 584 N.E.2d 140 (1991), the court held that a passenger in the driver's vehicle may be held jointly liable to a third party when the passenger verbally encourages the driver to exceed the posted speed limit and disregard a stop sign, and the driver thereafter fatally injures a third person. Liability is found where a person is engaged in a joint concerted tortious activity and any alleged injuries were the result of such activity. Clausen, id.
The allegations made by Jerry in his amended complaint show that Shannon agreed to enter into a concerted activity whereby Shannon would follow the drunken *522 Candice and would direct and/or distract her by calling her on her cell phone. The allegations also show that Candice and Shannon conspired to leave the scene of an accident where serious injury to Jerry had occurred. Thus, like the passenger in Sanke, Shannon encouraged Candice's tortious activity. It is possible that Shannon, like the passenger in Sanke, could be held jointly liable for Jerry's injuries.
Furthermore, we note that Shannon owed a duty of reasonable care to those that shared the road with her, both motorists and pedestrians. See Claxton, 615 N.E.2d at 474. Shannon, as an individual, may have breached this duty by calling and distracting a person she knew was operating a vehicle while under the influence of alcohol. Thus, Shannon may be found liable for Jerry's injuries even if she did not gratuitously assume a duty or act in concert with Candice.
We hold that the trial court abused its discretion in dismissing Jerry's amended complaint for failure to state a claim. We reverse and remand with instructions that the trial court vacate its order.
Reversed and remanded.
RILEY, J., concurs.
VAIDIK, J., concurring in result with separate opinion.
VAIDIK, Judge, concurring in result.
I agree with the result reached by the majority but write separately to address various issues raised in this case.
The majority mentions several Restatement provisions en route to its conclusion, and I think most are inapplicable in light of the allegations raised in Jerry's complaint. Restatement section 315 discusses the duty to control third parties:
There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
Restatement (Second) of Torts § 315 (1965). The "special relations" referred to in Subsection (a) are specified in Restatement sections 316 through 319. Id. § 315 cmt. c. Section 316 discusses parents and their minor children. Section 317 pertains to masters and servants. Section 318 involves owners and licensees. None of those relationships is presented here. Section 319 specifies that "[o]ne who takes charge of a third person whom he knows or should know to be likely to cause bodily harm to others if not controlled is under a duty to exercise reasonable care to control the third person to prevent him from doing such harm." This Court has previously observed that Section 319 is directed toward "situations in which a dangerous person is in the custody of someone else, as when a person is hospitalized due to a contagious disease or a mental illness manifested by violence." Sports, Inc. v. Gilbert, 431 N.E.2d 534, 536 (Ind.Ct.App. 1982). There is no allegation of a custodian/ward relationship in this case. I would therefore conclude that Section 315 and corresponding Section 319 do not apply in the instant situation. See 34 Am. Jur. Trials 499, Failure to Protect the Public From an Intoxicated Driver § 22 (1987) ("Most courts have refused to impose liability for the actions of a drunken driver on a nonsupplier of liquor under such a theory....").
Likewise, Section 324A, which involves gratuitous or contractual undertakings, is inapplicable:

*523 One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
Jerry's allegations fail to disclose any undertaking within the contemplation of Section 324A. The complaint in no way indicates how Shannon agreed to "render services" for Candice beyond devising a plan to follow her home. As the majority puts it, this is a case in which "a person assisted the intoxicated in driving." Op. at 521. However, helping a drunk driver get behind the wheel and drive herself somewhere is not a service one could "recognize as necessary for the protection of a third person." Rather, it is the opposite: a service which one should recognize as patently dangerous.
That leaves us with the final provision at issue, Restatement (Second) of Torts section 876. Section 876 pertains to aiding, abetting, or conspiring to commit a tort. It states as follows:
For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
(a) does a tortious act in concert with the other or pursuant to a common design with him, or
(b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
(c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.
The comment to Subsection (b) explains that if "encouragement or assistance is a substantial factor in causing the resulting tort, the one giving it is himself a tortfeasor and is responsible for the consequences of the other's act." Restatement (Second) of Torts § 876 cmt. d. "What counts as substantial aid or encouragement no doubt depends heavily on the facts." 2 Dan B. Dobbs, The Law of Torts § 340 (2001). Here the complaint alleges that Shannon "actively devised and engaged in a plan with Candice, wherein Shannon would follow Candice as she drove her car home," Appellant's App. p. 27, and that "[a]fter the collision, Candice, in concert with her mother, Shannon, consciously elected to leave the scene." Id. at 28. Given our duty to review a ruling on a motion to dismiss by looking at the pleadings in the light most favorable to the non-movant with every reasonable inference construed in the non-movant's favor, I believe that under these allegations, Shannon could conceivably be liable for aiding or encouraging Candice's driving while intoxicated and leaving the scene of an accident. I therefore agree that 12(B)(6) dismissal was improper. See Simmons v. Homatas, 386 Ill.App.3d 998, 325 Ill.Dec. 898, 898 N.E.2d 1177, 1183-85 (2008) (finding defendant strip club subject to liability under Section 876 for, among other things, facilitating patron's intoxication and placing him behind the wheel).
Finally, I wish to express my disagreement with the majority's comments about Shannon and Candice's cell phone conversation. *524 The majority concludes that Shannon may have breached her own duty of care "by calling and distracting a person she knew was operating a vehicle while under the influence of alcohol." Op. at 522. Perhaps the content of the cell phone conversation may evidence Shannon's aid or encouragement of Candice's tortious conduct. But I do not believe that merely calling someone on the phone knowing that the person is driving and intoxicated constitutes a tortious act on its own. See also Jay M. Zitter, Annotation, Civil Liability Arising from Use of Cell Phone While Driving, 36 A.L.R.6th 443 (2008).
For the foregoing reasons, I concur in result.
NOTES
[1] This concept is discussed in Restatement (Second) of Torts § 324A, which provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
(a) his failure to exercise reasonable care increases the risk of such harm, or
(b) he has undertaken to perform a duty owed by the other to the third person, or
(c) the harm is suffered because of reliance of the other or the third person upon the undertaking.
[2] The Hawn court cited Restatement (Second) of Torts § 315, which provides:

There is no special duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
(a) a special duty exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
(b) a special relation exists between the actor and the other which gives to the other a right to protection.
[3] Shannon cites Cuppy v. Bunch, 88 S.D. 22, 214 N.W.2d 786 (1974) in support of dismissal of Jerry's claim. This case, which involved a drunk driver following a friend at the friend's behest, does not evidence the alleged breadth of involvement found in the instant case.