

**FILED**

Feb 02 2017, 8:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Karl J. Veracco
Larry L. Barnard
Carson Boxberger LLP
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE

Scott L. Bunnell
Andrew S. Williams
Michelle K. Floyd
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Rachel Neal,

*Appellant-Plaintiff,*

v.

IAB Financial Bank, f/k/a
Grabill Bank,

*Appellee-Defendant.*

February 2, 2017

Court of Appeals Case No.
02A03-1604-CT-1002

Appeal from the Allen Superior
Court

The Honorable David J. Avery,
Judge

Trial Court Cause No.
02D09-1409-CT-446

**May, Judge.**

[1] Rachel Neal appeals a summary judgment in favor of IAB Financial Bank ("the Bank"). She argues the trial court erred in finding the Bank owed no duty toward her.[1] We affirm.

## Facts and Procedural History

[2] On September 27, 2012, Gabriel Biddle drove into the Bank's parking lot because he had a flat tire. Bank employees suggested Biddle move his car into the farthest teller lane because it would be easier to change the tire there. To do so, he entered the teller lane through the exit. He moved his car without difficulty or complications.

[3] The Bank employees who spoke with Biddle said he appeared "somewhat unaware and unsettled," (Appellee's App. at 6), but they assumed he was frustrated with needing to change the tire. They did not see any alcohol containers in the car, observe that his eyes were bloodshot, or smell alcohol. They did not suspect he was intoxicated. They did not take possession of Biddle's keys or exert any control over his car. The Bank employees testified they were not trained, as part of their jobs, to identify whether an individual is intoxicated.

---

[1]We held oral argument in this case on December 7, 2016, at the Allen County Courthouse in Fort Wayne. We thank court staff for their hospitality and commend counsel for their well-prepared advocacy.

The Bank employees helped Biddle change his tire, and afterward they noticed he "kind of staggered." (*Id.*) Biddle got into his car and left the Bank property. After he left, the Bank employees questioned whether there was something wrong with Biddle and began to speculate he might have been drinking. The Bank's assistant manager, Tyler Shawgo, called 911 to report the Bank employees' suspicion that Biddle "might be driving drunk." (Appellant's App. at 54.) During the 911 call, Shawgo told the dispatcher Biddle "just didn't kinda [sic] seem to know what was going on . . . he just did not seem all O.K. – he was kind of staggering and wasn't really aware of what was . . . ." (*Id.* at 55.) The dispatcher asked Shawgo "so he appeared like he had been drinking?" and Shawgo replied "Mmmm-hmmmm." (*Id.*) Biddle was later involved in a traffic accident that injured Neal.

Neal sued the Bank,[2] alleging she would not have been injured in the accident but for the Bank employees' negligent act of helping Biddle change his tire so he could get back on the road. She claimed the Bank assumed a duty of care toward her and other motorists when its employees helped change the tire. The trial court granted the Bank's motion for summary judgment. It determined that under Indiana law, a party cannot be held liable for a drunk driver causing injuries to a third party unless it furnished the drunk driver alcohol, maintained

---

[2] The parties do not dispute the Bank employees were acting within the scope of their employment and, therefore, the Bank would be vicariously liable for employees' actions if employees were found to be negligent. *See Sword v. NKC Hospitals, Inc.,* 714 N.E.2d 142, 147 (Ind. 1999) (under theory of *respondeat superior*, an employer can be held liable for the wrongful acts of his employee which are committed within the scope of employment).

a legal right to control the vehicle, or had a special relationship with the other parties.

# Discussion and Decision

We review summary judgment using the same standard as the trial court: summary judgment is appropriate only where the designated evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Rogers v. Martin,* 63 N.E.3d 316, 320 (Ind. 2016). All facts and reasonable inferences are construed in favor of the non-moving party. *City of Beech Grove v. Beloat,* 50 N.E.3d 135, 137 (Ind. 2016). Where the challenge to summary judgment raises questions of law, we review them *de novo*. *Rogers,* 63 N.E.3d at 320.

To prevail on a claim of negligence, Neal must demonstrate (1) the Bank owed a duty to Neal; (2) the Bank breached that duty by allowing its conduct to fall below the applicable standard of care; and (3) the Bank's breach of duty proximately caused a compensable injury to Neal. *Id*. at 321. Absent a duty, there can be no breach. *Id.* The trial court found the Bank had no duty to Neal.

Neal contends the trial court erred in entering summary judgment in favor of the Bank on the premise it had no duty. Specifically, she argues "the Bank gratuitously assumed a duty when its employees acted to assist a visibly intoxicated Biddle to change his tire." (Appellant's Br. at 6.) The Bank argues it assumed no duty to Neal because it "did not specifically and deliberately

undertake any service or obligation to ensure Biddle, Neal, or other drivers on the public roadway were safe from drunk drivers." (Appellee's Br. at 16.)

[9] Whether a duty exists is a question of law for the court to decide. *Rogers,* 63 N.E.3d at 321. We therefore review *de novo* whether the Bank owed Neal a duty. *See id.* at 320 (reviewing existence of duty *de novo*). Where the element of duty has "already been declared or otherwise articulated," judicial determination of the existence of a duty is unnecessary. *Id.* In determining whether a duty exists when it has not been established by law, we use a three-part balancing test under which we consider: (1) the relationship between the parties, (2) the reasonable foreseeability of harm, and (3) public policy concerns. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. Ct. App. 1991), *disapproved in other circumstances by Goodwin v. Yeakle's Sports Bar and Grill, Inc.*, 62 N.E.3d 384, 391 (Ind. 2016) (holding the *Webb v. Jarvis* three-part test for determining the existence of a duty is inappropriate in landowner-invitee cases).[3] We examine each factor in turn.

---

[3]On October 26, 2016, after the briefs were filed but before oral argument in this case, the Indiana Supreme Court handed down two decisions, *Goodwin v. Yeakle's Sports Bar & Grill, Inc.,* 62 N.E.3d 384 (Ind. 2016), and *Rogers v. Martin*, 63 N.E.3d 316 (Ind. 2016), both of which expressly disapproved the *Webb v. Jarvis* framework for determining duty in landowner-invitee cases. Our Indiana Supreme Court noted "balancing all of the *Webb* factors in landowner-invitee cases is not necessary," because it is "well-established" that "two of the three factors, relationship and public policy, [weigh] in favor of establishing a duty between a social host and his guest." *Rogers,* 63 N.E.3d at 323-24. The "critical element" for determining whether a duty exists in such situations, the court reasoned, is foreseeability of harm. *Id.*

The extent to which the *Goodwin* and *Roger*s framework for determining duty applies in negligence actions more generally remains to be decided. Here, we are not addressing the duty of a landowner to its invitee, but rather the duty of a third party to a motorist injured by an intoxicated driver. Unlike in landowner-invitee cases where there is already a well-established "duty to protect" owed by landowners to invitees, *see Rogers,* 63 N.E.3d at 324, Indiana courts are generally reluctant to impose a duty on individuals to control the

## (1) Relationship between the Parties

When addressing the duty to control the conduct of others, Indiana courts generally follow the principles set forth in the Restatement (Second) of Torts, which states:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless
>
> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives the other a right to protection.

*Hawn v. Padgett*, 598 N.E.2d 630, 633 (Ind. Ct. App. 1992) (quoting Restatement (Second) of Torts § 315 (1965)).

However, a duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily. *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind. 2014). "The assumption of such a duty *creates* a special relationship between

---

actions of a third person unless there is a "special relationship." *See Spierer v. Rossman,* 798 F.3d 502, 512 (7th Cir. 2015) (finding no special relationship existed between social peers who drank alcohol together); *Hawn v. Padgett*, 598 N.E.2d 630, 633 (Ind. Ct. App. 1992) (finding no special relationship existed between acquaintances who were camping and drinking alcohol together); *Lather v. Berg*, 519 N.E.2d 755, 759 (Ind. Ct. App. 1988) (holding negligence arising from nonfeasance must be premised on a special relationship between the parties), *reh'g denied*. In light of that factual difference, we find it especially critical to consider the relationship of the parties and public policy concerns in determining whether a duty exists here. Accordingly, we hold application of the *Webb v. Jarvis* three-part balancing test is appropriate. To the extent *Goodwin* and *Rogers* establish a new framework for determining foreseeability, *see Rogers*, 63 N.E.3d at 325, we adopt that framework and apply it herein within the larger *Webb v. Jarvis* test for determining duty.

the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Id.* (emphasis added). This concept is expressed in Restatement (Second) of Torts § 324A (1965), which provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

[12] The assumption of this duty requires "affirmative, deliberate conduct" making it apparent the actor specifically undertook to perform the task he is charged with having performed negligently, because "without the actual assumption of the undertaking there can be no correlative legal duty to perform that undertaking carefully." *Yost,* 3 N.E.3d at 517. It is therefore "essential to identify and focus on the specific services undertaken," for "liability attaches only for the failure to exercise reasonable care in conducting the 'undertaking.'" *Id.* "Where the record contains insufficient evidence to establish such a duty, the court will decide the issue as a matter of law." *Id.*

[13]  "[A]s a general rule under the gratuitous undertaking concept, a person other than the driver is not liable for damages caused by the negligent acts of the driver unless that person has a special relationship that gives him or her the right to control the vehicle." *Buchanan ex rel. Buchanan v. Vowell*, 926 N.E.2d 515, 520 (Ind. Ct. App. 2010). Under this rule, we have held there is no duty to try to prevent an intoxicated person from driving. *Hawn*, 598 N.E.2d at 634. We have drawn a distinction, however, between "preventing" an intoxicated person from driving and "assisting" an intoxicated person in driving. *See Buchanan*, 926 N.E.2d at 521 (holding a person who assisted an intoxicated person in driving may be liable to a third party injured by the intoxicated driver).

[14]  In *Hawn*, a group of friends went camping and drank alcohol. The defendants attempted to prevent Scott, a drunk friend, from driving by taking his keys. However, Scott became belligerent, so the defendants returned Scott's keys to him. Scott subsequently drove his truck into a tree, injuring the plaintiff, Hawn, who was asleep in the back of the truck. *Id.* at 632. Hawn sued the other two campers, arguing they "assumed a duty to prevent their friend from driving while intoxicated because [their] gratuitous intervention gave rise to a special relationship when one did not otherwise exist." *Id.* at 632.

[15]  We first noted the general rule that, in the absence of a special relationship, there is no duty to control the conduct of a third person to prevent him from causing physical harm to another. *Id*. at 633 (citing Restatement (Second) of Torts § 315). However, we noted the law may impose a duty to control the

conduct of a third party when three factors are demonstrated: (1) where a person is in need of supervision or protection (such as a child, intoxicated person, or business invitee); (2) from someone who is in a superior position to provide it (such as a parent, supplier of alcohol, business owner, or hospital); and (3) that person has a right to intervene or control the actions of the other person. *Id.* (citing *Sports, Inc. v. Gilbert*, 431 N.E.2d 534, 538 (Ind. Ct. App. 1982), *trans. denied*). We then reasoned the two defendants "were merely acquaintances of Scott and Hawn[,] . . . were not charged with their supervision or protection, and had no right to control their actions." *Id.* Furthermore, the defendants "did not supply Scott or Hawn with alcohol or other drugs." *Id.* We concluded "no special relationship arose between them," and therefore "they did not assume a duty to control Scott." *Id.* In holding the friends were not liable, we reasoned:

> [C]ourts should be reluctant to extend liability to those who gratuitously attempt to prevent intoxicated individuals from driving. A finding of liability in this case would encourage others to take no action rather than incur the risk of liability for failing to successfully control an intoxicated motorist.

*Id.* at 634 n.2.

[16] We revisited the concept of gratuitous undertakings in *Buchanan*. There, Vowell and her daughter drank alcohol together at a work event to such an extent that the daughter was legally intoxicated. Instead of calling a cab, Vowell and her daughter devised a plan wherein each would drive her own car home, with the daughter in a lead car and Vowell trailing behind, as the two

spoke to each other on their cell phones. On the way home, the daughter struck a pedestrian, causing injuries. The pedestrian brought suit against Vowell claiming negligence, but the trial court dismissed the pedestrian's complaint under Indiana Trial Rule 12(B)(6) for failure to state a claim upon which relief could be granted. *Id*. at 518.

[17] On appeal, we reversed, concluding the pedestrian sufficiently stated a claim for negligence. We held the mother gratuitously assumed a duty to prevent her daughter from injuring others when she agreed to make sure her daughter drove home successfully. *Id*. at 521. In so holding, we reiterated that courts should be reluctant to extend liability to those who gratuitously attempt to prevent intoxicated individuals from driving. *Id*. at 520 (citing *Hawn*, 598 N.E.2d at 634 n.2). However, we distinguished *Hawn* because *Buchanan* involved a defendant who tried not to *prevent* an intoxicated driver from driving, but rather to *assist* her with driving. *Id.* at 520-21. We noted the allegations in the complaint demonstrated Vowell "went beyond the actions of the defendants in *Hawn*" and "agreed to enter into a concerted activity whereby [Vowell] would follow the drunken [daughter]." *Id.* at 521-22. Thus, because Vowell "encouraged [her daughter's] tortious activity," we concluded a duty could exist under the theory of gratuitous undertakings. *Id.* at 522.

[18] Neal urges us to conclude, under *Buchanan*, the Bank assumed a duty to her and other motorists when its employees undertook to help change Biddle's tire, which allowed him to get back on the road. We hold *Buchanan* is distinguishable.

[19] Here, Biddle, who had no relationship with the Bank, pulled into the Bank parking lot in the middle of the day with a flat tire. It was not until after the Bank employees finished helping him change the tire, and Biddle was on his way, that the Bank employees became concerned Biddle might be intoxicated. The Bank's assistant manager then called 911 to report the incident because "they were concerned for Biddle's safety and for the safety of the motoring public." (Appellant's App. at 62.) Unlike in *Buchanan*, where Vowell was the mother of the intoxicated driver, here, there was no relationship between Biddle and the Bank employees. In addition, the nature of the Bank employees' conduct here is drastically different than Vowell's, as Vowell deliberately assisted her daughter in committing tortious behavior, *i.e.*, Vowell was on the telephone to help her daughter drive while intoxicated. Here, Biddle happened upon the Bank employees with a flat tire, and the Bank employees, acting out of a Good Samaritan reflex, simply helped a distressed motorist change his tire.

[20] We hold the relationship between the parties here is more like the one discussed in *Hawn*. In *Hawn,* we reasoned no special relationship arose between the defendants and either Scott or Hawn because the defendants were not charged with their supervision or protection, and had no right to control their actions. *Hawn*, 598 N.E.2d at 634. Similarly, here, the Bank employees were not in a superior position to supervise or protect Biddle, nor did they have any right or duty to control his actions.

[21] Moreover, we must emphasize the importance of identifying the specific services undertaken here. *See Yost,* 3 N.E.3d at 517 (recognizing it is "essential

to identify and focus on the specific services undertaken," for "liability attaches only for the failure to exercise reasonable care in conducting the 'undertaking'"). Neal lumps the Bank's actions together as "assisting a visibly intoxicated driver in changing a flat tire," (Appellant's Br. at 3), and would have us hold that changing the tire was "assistance with driving." However, as we held above, the Bank employees did not assist Biddle with driving in the way that Vowell helped her daughter. The specific service undertaken here was to change the tire. And Neal does not allege that in doing so, the Bank failed to use reasonable care, which caused an accident between Biddle and Neal. We therefore cannot say it is apparent the Bank specifically and deliberately undertook to protect the public roadways, and therefore Neal, from an intoxicated driver.

[22] Because we find no special relationship existed between the Bank and Biddle, or between the Bank and Neal, and the Bank did not create any special relationship by gratuitously assuming a duty, we conclude the relationship of the parties weighs in favor of no duty here.[4]

### *(2) Foreseeability*

---

[4]We also note no liability arises here under the Indiana Dram Shop Act, as the Bank did not furnish alcohol to Biddle. *See* Ind. Code § 7.1-5-10-15.5 (2016) (requiring a person furnishing alcohol have actual knowledge the person to whom alcohol was furnished was visibly intoxicated at the time the alcohol was furnished before liability may arise).

[23] We likewise find a lack of foreseeability that weighs against finding the Bank had a duty to Neal. When foreseeability is part of the duty analysis, it is "a general threshold determination that involves the evaluation of (1) the broad type of plaintiff and (2) the broad type of harm." *Rogers*, 63 N.E.3d at 325. This foreseeability analysis focuses on "the general class of persons of which the plaintiff was a member and whether the harm suffered was of a kind normally to be expected – without addressing the specific facts of the occurrence." *Id.* This analysis "comports with the idea that 'the courts will find a duty where, in general, reasonable persons would recognize it and agree that it exists.'" *Id.*

[24] Applying this foreseeability analysis to the case at hand, our inquiry is whether a duty should be imposed on the Bank, a financial institution, to take precautions to protect motorists on the public roadways from the potential of a stranded motorist being intoxicated, before it gratuitously attempts to render aid to that stranded motorist. Being stranded due to a flat tire is commonplace on roadways. And, we acknowledge, the incidence of intoxicated drivers on roadways continues to be higher than ideal. However, we cannot say drunk drivers routinely stop at places of business seeking aid during the middle of the day. It is therefore not reasonably foreseeable to a third person - whether it be an individual or business - who acts as Good Samaritan, that a stranded motorist to whom they render aid will harm another motorist on the public roadway. To require every individual who undertakes to aid a stranded motorist to safeguard against the possibility that motorist may be intoxicated

would be requiring those individuals to ensure the safety of all motorists. We do not believe reasonable persons would recognize such a duty exists.

[25] To the extent Neal argues there is a general duty "not to assist an intoxicated person in driving," (*see* Appellant's Br. at 7), we agree. We held so in *Buchanan.* Indeed, the Seventh Circuit Court of Appeals noted in its analysis of *Buchanan,* the consequences of Vowell's decision to assist her daughter in driving drunk were "predictably tragic." *Spierer v. Rossman*, 798 F.3d 502, 512 (7th Cir. 2015). But for reasons already discussed above, the facts here are distinguishable from those in *Buchanan.* Thus, we cannot say the harm to Neal was foreseeable.

### (3) Public Policy

[26] Lastly, public policy considerations weigh heavily against finding the Bank owed a duty to Neal. Here, roughly five minutes after Biddle left the Bank's premises, Shawgo called 911 to report the incident. The 911 call indicates Shawgo did not need any emergency services, but "just want[ed] to get [the information about Biddle] out and make sure that he [was] safe and everybody else [was] safe." (Appellant's App. at 56.) While Neal argues this case is distinguishable from *Hawn* because *Hawn* "does not involve a claim of assisting a drunk driver in returning to the roadway, but merely failing to prevent a drunk from doing so," (Appellant's Br. at 10), we actually find the policy implications here closely parallel those discussed in *Hawn*.

[27] Like in *Hawn*, where the camping friends attempted to prevent their friend from driving intoxicated out of concern for safety, the Bank employees here called

911 out of concern for safety upon concluding Biddle might be intoxicated. Imposing liability here would punish the Bank for calling 911 to report concern for Biddle's safety and for the safety of the motoring public. It would, as we stated in *Hawn*, encourage others in the future to take no action when they believe they encountered an intoxicated person, rather than incur the risk of liability. *Hawn*, 598 N.E.2d at 634 n.4. We are reluctant to so hold.

[28] In the same way, we note public policy should encourage rendering aid or assisting stranded motorists on the roadways, not dis-incentivize it. Were we to impose a duty on all individuals to consider the potential risk of harm to third persons before helping motorists in peril, it would require those individuals to weigh their personal risk of exposure to liability to third persons injured by the motorist against the motorist's immediate need for assistance. We refuse to impose such a duty.

[29] In so holding, we do not unequivocally suggest actors who help motorists never have a duty toward unknown third persons foreseeably at risk of injury resulting from negligent conduct of the driver. But where, like here, there was no prior relationship between the Bank and either Biddle or Neal, nor evidence of an actor's knowledge of the motorist's intoxication, imposing a duty on Good Samaritans that could discourage providing assistance to motorists in need of aid is contrary to public policy. As the Court of Appeals for the Seventh Circuit recently noted, "[t]here is simply no case where Indiana courts have recognized responsibility on the part of a person to ensure the safety of intoxicated persons

with whom they have unexpectedly come into contact." *Spierer*, 798 F.3d at 513. We decline to recognize such a duty today.

# Conclusion

[30] Because all three of the *Webb* factors lean against imposing a duty here, the trial court did not err in concluding the Bank owed no duty to Neal. Accordingly, we affirm the trial court's summary judgment in favor of the Bank.

[31] Affirmed.

Crone, J., and Altice, J., concur.