CHICAGO TITLE AND TRUST COMPANY, as Trustee, Plaintiff-Appellant, v. TELCO CAPITAL CORPORATION, f/k/a Technical Equipment Leasing Corporation, Defendant-Appellee.

First District (3rd Division)   No. 1—96—2257

Opinion filed September 10, 1997.—Rehearing denied October 17, 1997.

Franklin S. Schwerin and James R. Edmunds, both of Schwartz, Cooper, Greenberger & Krauss, Chartered, of Chicago, for appellant.

Gerald M. Tierney, Jr., of Chicago, for appellee.

JUSTICE LEAVITT delivered the opinion of the court:

In March 1981, Telco Capital Corporation (Telco) issued debentures in a principal amount exceeding $5.6 million. At that time, Telco and Chicago Title and Trust Company (CTT) executed an indenture pursuant to which CTT acted as trustee for the debenture holders' benefit. The indenture was subject to the Trust Indenture Act of 1939. 15 U.S.C. § 77 aaa et seq. (1981).

On April 1, 1995, Telco owed CTT $207,342.98 in interest. The outstanding principal balance, at that time, was $2,256,790.76. Telco did not pay the interest then due. Pursuant to the indenture, CTT declared the principal due and payable immediately. Nonetheless, Telco paid nothing.

CTT filed suit seeking the principal and interest Telco owed. Telco filed an answer admitting the default and the amount owed, but alleging an affirmative defense. Telco asserted that it owed approximately $59.7 million to other parties and that debt was senior to the debentures. Telco claimed the senior indebtedness barred CTT from obtaining judgment against Telco based on the indenture's language.

CTT moved to strike Telco's affirmative defense and for summary judgment. No question of fact was raised. The court denied CTT's motion to strike and it's motion for summary judgment. The court then granted summary judgment in favor of Telco.

In reviewing a grant of summary judgment, we apply the *de novo* standard. *Demos v. National Bank of Greece*, 209 Ill. App. 3d 655, 659-60, 567 N.E.2d 1083 (1991). Accordingly, we grant no deference to the trial court's conclusion and conduct an independent review of the legal issue. *Demos*, 209 Ill. App. 3d at 659-60. No fact question was raised here. Because we disagree with the trial court's interpretation of the indenture and find Telco was not entitled to judgment as a matter of law, we reverse.

Telco claimed it was not obliged to pay CTT because it had senior indebtedness. Section 1103 of the indenture, which was the basis of Telco's affirmative defense, is part of article eleven. That article is entitled "Subordination of Debentures." Section 1103 states:

> "[U]pon the maturity of any Senior Indebtedness by lapse of time, acceleration or otherwise, all principal of and interest on all such matured senior indebtedness shall first be paid in full, or

such payment shall have been duly provided for, before any payment on account of principal or premium, if any, or interest is made upon the debentures."

Senior Indebtedness is defined:

"the principal of, premium, if any, and interest on indebtedness (other than the debentures), whether outstanding on the date of the indenture or thereafter and howsoever created, incurred, assumed or guaranteed by [Telco] for any purpose whatsoever, and all renewals, extensions and refunding thereof, unless in each case the terms of the instrument creating or evidencing the indebtedness provide that such indebtedness is not superior in right of payment to the debentures."

The court agreed with Telco and found, based on section 1103, CTT could not obtain judgment for past-due principal and interest on the debentures because Telco undisputedly had matured senior indebtedness which was due and unpaid.

However, article eleven was not intended to allow Telco to forever repudiate its debt to the debenture holders. Rather, it establishes the relative rights of debenture holders and holders of senior indebtedness to funds collected from Telco. Section 1102 states:

"[T]he provisions of this Article Eleven are and are intended solely for the purpose of defining the relative rights of the holders of the debentures, on the one hand, and the holders of the senior indebtedness, on the other hand, and nothing contained in this Article Eleven or elsewhere in this indenture or in the debentures is intended to or shall impair, as between [Telco], its creditors other than the holders of senior indebtedness, and the holders of the debentures, the obligation of [Telco], which is unconditional and absolute, to pay to the holders of the debentures the principal of (and premium if any) and interest on the debentures as and when the same shall become due and payable in accordance with their terms, and to affect the relative rights of the holders of the debentures and creditors of [Telco] other than the holders of the senior indebtedness, nor shall anything herein or therein prevent the Trustee or the holder of any debenture from exercising all remedies otherwise permitted by applicable law upon default under this indenture, subject to rights, if any, under this Article 11, of the holders of senior indebtedness in respect of cash, property or securities of [Telco] received upon the exercise of any such remedy."

In other words, upon Telco's default, CTT may exercise any remedy the law provides, subject to the rights of holders of senior indebtedness to Telco's assets which the trustee might receive upon the exercise of its remedies. CTT can obtain a judgment against Telco,

but holders of senior indebtedness have a primary right to assets CTT obtains upon enforcement of its judgment.

Other provisions of the indenture harmonize with the collection process contemplated by section 1102. Section 503, contained in the indenture's remedies section, relevantly reads:

> "If [Telco] fails to pay such \*\*\* amounts [in default] forthwith upon \*\*\* demand, the Trustee, in its own name and as trustee of an express trust, may institute a judicial proceeding for the collection of the sums so due, and unpaid, and *may prosecute such proceeding to judgment* or final decree, and may enforce the same against [Telco] or any other obligor upon the debentures and, subject to the provisions of Article 11, collect the moneys adjudged or decreed to be payable in the manner provided by law out of the property of [Telco] or any other obligor upon the debentures wherever situated." (Emphasis added).

Section 503 flatly contradicts the proposition that the existence of senior indebtedness bars CTT from obtaining judgment against Telco. It establishes that the trustee may file suit to collect sums due and unpaid and may "prosecute such proceeding to judgment." Judgment can be enforced; however, collected funds are subject to article eleven.

Other provisions also contradict Telco's proffered interpretation of the indenture. Section 506 reads in part:

> "Any money collected by the Trustee pursuant to this Article shall, subject to the provisions of Article Eleven, be applied in the following order \*\*\*."

It expressly contemplates that the Trustee may collect funds, notwithstanding the existence of senior indebtedness, and that article eleven governs the distribution of such funds when senior indebtedness exists.

Section 508 reads:

> "Notwithstanding any other provision in this indenture, the holder of any debenture shall have the right, which is absolute and unconditional,
>
> (i) subject to the provisions of Article Eleven, to receive payment of the principal of (and premium, if any) and \*\*\* interest on such debenture on or after the respective due dates as expressed in such debenture, and
>
> (ii) to institute suit for the enforcement of any such payment on or after such respective dates, and such right shall not be impaired or affected without the consent of such holder."

Section 508(i) subjects debenture holders' right to receive money from Telco to article eleven. However, section 508(ii) does not relate debenture holders' absolute right "to institute suit" to article eleven, nor does it bar or limit entry of judgment.

Our interpretation of this indenture accords with the only reported decision on the subject, *UPIC & Co. v. Kinder-Care Learning Centers, Inc.*, 793 F. Supp. 448 (S.D.N.Y. 1992). There, the plaintiff, a subordinated debenture holder, sought to recover unpaid principal and interest on its debentures. The defendant-obligor moved to dismiss the complaint because it had matured senior indebtedness. The relevant indenture provisions were substantively identical to those of the CTT-Telco indenture. Both seem to be based on the model indenture provisions adopted by the Corporate Debt Financing Project of the American Bar Foundation and are thus quite similar. *UPIC & Co.*, 793 F. Supp. at 457.

The court in *UPIC & Co.* rejected the idea that subordination provisions exist to insulate issuers from liability to holders of subordinated debentures. It stated:

> "Rather than serve to diminish or impair the rights of Security-holders as against [the issuer] or function so as to protect [the issuer's] interests, the Subordination Clause serves to protect the relative rights of the holders of Senior Indebtedness as against those of the security holders, without impairing the Securityholders' absolute and unconditional right to payment of principal of and interest on the Securities." *UPIC & Co.*, 793 F. Supp. at 459.

As the court articulated in *UPIC & Co.*, a debenture holder benefits when he collects on a judgment then disgorges the proceeds of that judgment to holders of senior indebtedness because the debenture holder then becomes subrogated to the senior holders' rights. *UPIC & Co.*, 793 F. Supp. at 460. In fact, section 1102(d) of the indenture here explicitly provides subrogation rights to debenture holders. It reads:

> "[S]ubject to the payment in full of all senior indebtedness, the rights of the holders of the debentures shall be subrogated to the rights of the holders of senior indebtedness to receive payments or distributions of assets of [Telco] made in respect of senior indebtedness until all the debentures shall have been paid in full ***."

■ Finally, whenever practicable, we seek to avoid contractual construction which reaches an absurd result. *First Illinois Bank & Trust v. Galuska*, 255 Ill. App. 3d 86, 92, 627 N.E.2d 325 (1993). "[W]here a contract is susceptible to one of two constructions, one of which makes it fair, customary, and such as prudent men would naturally execute, while the other makes it inequitable, unusual, or such as reasonable men would not be likely to enter into, interpretation which makes rational and probable agreement must be preferred." *NutraSweet Co. v. American National Bank & Trust Co.*, 262 Ill. App. 3d 688, 695, 635 N.E.2d 440 (1994). The interpretation sug-

gested by Telco and adopted by the trial court would allow Telco to forever renege on its absolute and unconditional obligation to pay debenture holders because Telco can make sure it always has "senior indebtedness," as that term is defined in the indenture. Because this construction would make the contract nonsensical if not illusory, we reject it.

For all these reasons, we reverse the judgment of the trial court granting Telco's summary judgment motion and remand this cause.

Reversed and remanded.

COUSINS, P.J., and CAHILL, J., concur.