In the

# United States Court of Appeals
## For the Seventh Circuit

Nos. 15-3326 & 15-3327

BANK OF COMMERCE, *et al*.,

*Plaintiffs-Appellees*,

*v.*

KENNETH E. HOFFMAN, JR.,

*Defendant-Appellant*.

Appeals from the United States District Court for the
Central District of Illinois.
Nos. 13-cv-04001 & 13-cv-04075 — **Sara Darrow**, *Judge*.

ARGUED APRIL 13, 2016 — DECIDED JULY 15, 2016

Before EASTERBROOK, MANION, and ROVNER, *Circuit Judges*.

MANION, *Circuit Judge*. This litigation centers on the meaning of a settlement agreement and release signed by Kenneth Hoffman. Hoffman had several loan obligations to Country Bank, for which Bank of Commerce is now the successor in interest, and the settlement released Hoffman from his small-

est loan. He urges that the release covered a bigger loan guarantee, too. We conclude that the release agreement did not, however, free him from that larger obligation.

As a result, we affirm the district court's decision to grant summary judgment in favor of the Bank of Commerce.

## I. Background

The facts underlying this litigation trace back to 2009, when Kenneth Hoffman executed the first of three loan agreements with Country Bank. In June 2009, he executed a $1.5 million tax-increment finance note, also known as a TIF note, for a development project by Fyre Lake Ventures LCC. This first loan was backed by a TIF bond, a mechanism for local governments to finance real estate development, and Hoffman was not personally responsible to pay this loan.[1] In February 2010, Fyre Lake Ventures signed a $9 million loan from Country Bank, with Hoffman acting as a co-guarantor for $900,000 of this loan. Separately, Hoffman borrowed $157,300 from the bank in April 2011, this time with his wife Barbara. The Hoffmans' promissory note was secured by mortgages on three lots in a Milan, Illinois housing development.

A challenging economy caused Country Bank to fail in October 2011. The FDIC was appointed as receiver and, later, the Bank of Commerce became successor in interest to the FDIC. In the succession process, Bank of Commerce took over the obligations owed to Country Bank. The economic problems

---

[1] TIF is an acronym for tax-increment financing, which is a mechanism utilized by municipalities to encourage development by issuing tax-exempt municipal bonds to pay for part of the development infrastructure. Appellee Br. at 6 n.5.

also impacted the Hoffmans, and by October 2011, all three obligations that Hoffman signed had fallen into default.

After negotiations in 2012, the FDIC and both Hoffmans signed the settlement agreement and release that we are asked to interpret here. In exchange for titles to the three Milan lots, the Hoffmans were released of their obligations to Country Bank and its successors. The question is which loans, exactly, were released: only the $157,300 note signed by the Hoffmans or also the Fyre Lake guarantee?

Less than three months after signing this release, the FDIC sued Kenneth Hoffman and numerous other guarantors of the Fyre Lake loan, $900,000 of which he personally guaranteed. Because that loan was in default, the FDIC sued to collect. Hoffman and the FDIC entered cross-motions for summary judgment, which disputed whether Hoffman's settlement with the FDIC released him from his obligations on the Fyre Lake loan. The plain language of the Hoffman-FDIC settlement states that Illinois contract law, which all parties agree applies here, governs this agreement. As a result, the district judge applied state law. While the judge found that the disputed language in the settlement agreement was ambiguous, she went on to conclude that parole evidence supported the bank's interpretation of the settlement: Hoffman was only released from his obligation on the $157,300 loan. The district court thus entered summary judgment for Bank of Commerce, which, by this point, had succeeded the FDIC.

After losing in district court, Hoffman brought these consolidated appeals against the FDIC and its successor in interest, Bank of Commerce.

## II. Discussion

We review summary judgment awards de novo. *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). "The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law." *Id.* At this point, "[i]f the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial." *Id.*

In this case, when we examine whether the Hoffman-FDIC settlement released Hoffman from his $900,000 personal guarantee on the $9 million Fyre Lake loan, we conclude that the district court's ruling was correct. The bank carried its burden, as a moving party, to show that there was no genuine issue of any material fact. At this point, the burden of proof therefore shifted to Hoffman, who could only survive summary judgment by establishing that specific facts created a material factual dispute. For the reasons we discuss below, however, Hoffman never showed any genuine issue for trial. On the contrary, the established facts and law completely undermined his case. As a result, the district court appropriately entered summary judgment for Bank of Commerce.

Before addressing this case on the merits, we briefly examine whether we have jurisdiction over this litigation.

### A. Jurisdiction

When the FDIC originally filed suit over the $9 million Fyre Lake obligation, the FDIC grounded its complaint on

federal jurisdiction. This was appropriate because, when the FDIC "is a party" to a lawsuit, the case is "deemed to arise under the laws of the United States." 12 U.S.C. § 1819(b)(2)(A). But during the course of this litigation, the FDIC assigned its interest in Hoffman's obligations to Bank of Commerce.

We have not expressly ruled on whether federal jurisdiction is lost when another party is substituted for the FDIC. The traditional principle in diversity cases is that, if jurisdiction existed when the case was filed or removed, jurisdiction will not be disturbed by subsequent acts. *Matter of Shell Oil Co.*, 966 F.2d 1130, 1133 (7th Cir. 1992). Our approach follows the Supreme Court, which has "consistently held that if [diversity] jurisdiction exists at the time an action is commenced, [it] may not be divested by subsequent events." *Freeport-McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991).

We find it appropriate to apply the same principle in FDIC litigation: even though the FDIC assigned its interest to another party, which was then substituted for the FDIC in this litigation, this case remains "deemed to arise under the laws of the United States." *See* 12 U.S.C. § 1819(b)(2)(A). Thus, we conclude that we have jurisdiction over this case, and we turn to the parties' arguments regarding the settlement contract.

### B. The Ambiguous Language

The threshold question on the merits is whether the parties' agreement has a clear meaning within the document's four corners. Under Illinois law, if a contract only permits one interpretation, that meaning controls. *AM Int'l, Inc. v. Graphic Mgmt. Assocs., Inc.*, 44 F.3d 572, 574 (7th Cir. 1995) (citing *Omnitrus Merging Corp. v. Ill. Tool Works, Inc.*, 628 N.E.2d 1165, 1168 (Ill. Ct. App. 1993)). If a contract's language is reasonably

or fairly susceptible to multiple meanings, Illinois courts will find the contract ambiguous. *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1037 (7th Cir. 1998) (quoting *Flora Bank & Tr. v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. Ct. App. 1991)). And when determining whether an agreement is ambiguous, the court must construe that contract as a whole. *Flora Bank & Tr. v. Czyzewski*, 583 N.E.2d 720, 725 (Ill. Ct. App. 1991).

We agree with the district court's reading of the contract, which juxtaposes conflicting statements in the Hoffman-FDIC settlement. On the one hand, the contract contains specific statements that absolve the Hoffmans from liability arising from "the Loan Documents or the Properties." The scope of this release is limited: "the Properties" are clearly defined as the three Milan parcels that secured the $157,300 loan. Further, Fyre Lake is not named anywhere in the contract. On the other hand, the settlement agreement also contains language that generally releases the Hoffmans from all liabilities. The FDIC, for itself and its successors, states that it:

> hereby releases and discharges KENNETH E. HOFFMAN JR. and BARBARA A. HOFFFMAN … from any and all liabilities, obligations, claims, actions, causes of action, liens, fees, and demands of whatsoever kind or nature, whether known or unknown, that FDIC-RECEIVER had, now has, or may have against such Released Parties, including, but not limited to, those arising out of, based on, or in any way connected with the Loan Documents, or any portion thereof, or the Properties or relating to claims against the Released Parties.

This sweeping language, read only in isolation, could release Kenneth Hoffman from liability on the Milan properties, the

Fyre Lake guarantee, and any other obligation he might have to the FDIC. Within its four corners, then, the Hoffman-FDIC settlement contains conflicting language.

The Illinois courts have repeatedly examined contracts with multiple release statements, where the "general language is inconsistent and conflicts with the specific language." *See*, *e.g.*, *Countryman v. Indus. Comm'n*, 686 N.E.2d 61, 64 (Ill. Ct. App. 1997). These contracts are deemed ambiguous. *See id.* As a threshold matter, we thus conclude that the contract before us is ambiguous. This ambiguity requires us to determine the contract's specific meaning through extrinsic evidence. *Richard W. McCarthy Trust Dated Sept. 2, 2004 v. Ill. Cas. Co.*, 946 N.E.2d 895, 903 (Ill. Ct. App. 2011).

## C. The Extrinsic Evidence and Rules of Construction

When interpreting an ambiguous contract, Illinois courts rely on two methods: extrinsic evidence and the rules of construction. *See Countryman*, 686 N.E.2d at 64; *McCarthy Trust*, 946 N.E.2d at 903. We utilize both today, as we examine the settlement contract that Hoffman and the FDIC signed.

Hoffman's own testimony leads us to conclude that the Hoffman-FDIC contract admits only one meaning. His words establish that he knew he was negotiating for a release of the $157,300 loan only, not for a multi-loan release.

Hoffman testified that, when negotiating the release on his smaller loan, he specifically asked loan officer Erica Covey whether he could also be released from his Fyre Lake obligations. While Covey was apparently sympathetic to his situation, Hoffman's understanding was that "she wasn't quite sure how, you know, all of this could be tied together." And

as he further testified, both parties understood that their contract on the $157,300 obligation had "nothing to do" with the Fyre Lake guarantee. The obligations remained separate.

Against this unambiguous record, Hoffman asks us to accept his claim that, when he executed the settlement agreement, he subjectively believed he was obtaining relief from both the $157,300 loan and the $900,000 Fyre Lake guarantee. This contradicts his testimony, strains credibility, and is insufficient to create a genuine factual issue. To reach a trier of fact, Hoffman would have to show material facts in the record that conflict with his own sworn testimony.

Like the parole evidence, the Illinois rules of construction also establish that Hoffman was only released from his $157,300 loan. When a contract might allow different constructions, Illinois courts prefer the reading that is "fair, customary, and such as prudent men would naturally execute." *Trade Ctr., Inc. v. Dominick's Finer Foods, Inc.*, 711 N.E.2d 333, 338 (1999) (quoting *Chi. Title & Trust Co. v. Telco Capital Corp.*, 685 N.E.2d 952, 956 (1997)) (internal marks omitted). This fair reading is preferred over an interpretation that makes a contract "inequitable, unusual, or such as a reasonable man would not be likely to enter." *Id.* And on the particular type of facts before us, Illinois courts have expressly provided a rule of construction for finding the contract's meaning: "where an ambiguity exists in a contract due to a conflict between two of its provisions, the more specific provision relating to the same subject matter controls over the more general provision." *Countryman*, 686 N.E. 2d at 64.

The specific provisions in the Hoffman-FDIC agreement refer to the $157,300 debt secured by mortgages on three Mi-

lan properties. A reasonable interpretation of what these specific provisions mean leaves no ambiguity. The contract states that the FDIC believes it is entitled, by the particular loan default at issue, to foreclose on the three Milan properties. It states that the FDIC will accept, in lieu of foreclosure, the deeds to these three properties. And with the deeds in lieu of foreclosure, the Hoffmans' $157,300 obligation is wiped out. On the specific language of this contract, therefore, the meaning is unequivocal: Hoffman's $157,300 obligation is the loan forgiven.

The contract also contains a general release, with sweeping language by the FDIC, "[f]or itself and its past, present and future predecessors, creditors, employees, agents, attorneys, affiliates, insurers, successors or assigns." As we have shown, this part of the contract releases the Hoffmans from "any and all liabilities, obligations, claims, actions, causes of action, liens, fees, and demands of whatsoever kind or nature, whether known or unknown." This general language, read in isolation, might appear to release all manner of liabilities.

When interpreting a contract with specific and general release language on the same subject matter, Illinois courts must allow the specific language to control. *See id.* This does not mean that the general language is knocked out of the contract, never to be seen again. Instead, we interpret the general provision in light of the specific provision. Here, under the Illinois legal standard, this means that the Hoffman-FDIC agreement is designed to release all manner of liabilities that are specifically related to the $157,300 loan. Thus, Hoffman is free from this loan only. He can never owe the FDIC or its successors anything on this particular loan. When we acknowledge the plain meaning of the specific release, and read the general

release in light of the specific language on the same subject matter, this is the necessary interpretation.

### III. Conclusion

On the record before us, there are no genuine issues of material fact that should have prevented the district court from entering summary judgment against Hoffman. Nor do we find error in the district court's application of the law. We therefore do not disturb the lower court's ruling that Hoffman was solely released from his $157,300 obligation.

The judgement of the district court is thus AFFIRMED.