In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 14-3171

ROBERT E. SPIERER, et al.,

*Plaintiffs-Appellants*,

*v.*

COREY E. ROSSMAN, et al.,

*Defendants-Appellees*.

———————————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:13-cv-00991 — **Tanya Walton Pratt**, *Judge*

———————————

ARGUED FEBRUARY 25, 2015 — DECIDED AUGUST 14, 2015

———————————

Before BAUER, FLAUM, and MANION, *Circuit Judges*.

MANION, *Circuit Judge*. After a night of heavy drinking, Lauren Spierer, a twenty-year-old Indiana University student, left the apartment of a classmate and disappeared. Four years later, she remains missing. Lauren's parents brought suit against three students who were with Lauren in the hours before her disappearance, alleging negligence and violations of Indiana's Dram Shop Act. After some claims

were dismissed but before discovery was conducted, the defendants moved for summary judgment on the grounds that the plaintiffs could only speculate about whether the defendants were the proximate cause of any injury sustained. The district court agreed and granted summary judgment for the defendants. The plaintiffs have appealed, contesting both the dismissal of claims and the award of summary judgment for the defendants. We affirm.

## I. Background

Because the district court granted summary judgment before general discovery was conducted, the facts are limited largely to those stated in the complaint. As alleged, the pleadings attempt to impose a measure of cohesion onto events spanning several hours and locations and involving various individuals—each of whom had been drinking alcohol, in some cases heavily. The result, by no fault of the plaintiffs, is that much of what we would like to know is missing, while much of what we do know defies apparent logic.

What we know with certainty is that this case is a tragedy. On June 2, 2011, Jason Rosenbaum, a student at Indiana University, threw a party at his apartment. Among his guests were fellow students Lauren Spierer, Corey Rossman, and Michael Beth, who, by all appearances, were well-acquainted with each other. Rosenbaum served alcoholic drinks at his party, and Lauren—scarcely five feet tall and one hundred pounds—was among those served.

She was not alone. For his part, Rossman drank heavily, and eventually he and Lauren left the party and went to his apartment which was located in the same complex.

Rossman's roommate, Michael Beth, had been at Rosenbaum's party and returned to the apartment where he encountered the two. Despite the fact that Lauren was visibly intoxicated, Rossman encouraged her to join him at a bar named Kilroy's that was located a few blocks from the apartment. He informed Beth that he wanted to have "three more drinks at the bar and then [he would] be feeling good."

Approximately one hour after leaving Rosenbaum's party, Lauren and Rossman went to Kilroy's where Lauren was observed stumbling and requiring Rossman's assistance to walk. Disregarding her precarious condition, Rossman bought Lauren several drinks; eventually she lost her shoes and mobile phone. They remained at Kilroy's until approximately 2:30 in the morning.

After leaving Kilroy's, the pair initially headed to Lauren's apartment complex where they encountered other students outside the elevator on Lauren's floor. Rossman got into a physical altercation with one of those students who took issue with him for failing to assist the visibly intoxicated Lauren into her apartment. Instead of escorting Lauren from the elevator to her apartment—a distance less than a hundred yards—the pair set off for his apartment where Rossman was observed en route carrying Lauren slung across his back.

At around 3:30 in the morning, Michael Beth (Rossman's roommate) returned to the apartment and was startled to find Rossman and Lauren there. At first, he suspected that they were burglars because the apartment had been the site of previous crimes. Instead, he encountered Lauren, who appeared even more intoxicated than she had been earlier in the evening. The pleadings suggest that Rossman went to

sleep at this point and that Beth was left alone with Lauren. In light of her condition—she was slurring her speech, for example—Beth tried to convince Lauren to sleep on the couch in the apartment. Lauren, however, wanted to go back to her apartment. For reasons that are not clear, instead of escorting Lauren back to her apartment, Beth brought her to Rosenbaum's apartment, which had been the site of the party earlier that evening.

Rosenbaum also grew concerned when he saw Lauren's condition. He attempted to contact several of her friends for the purpose of arranging a ride back to her apartment but was unable to arrange transport. At this point, Beth left his apartment. Shortly afterwards, at approximately 4:30 a.m., Rosenbaum allowed Lauren to leave his residence on her own and briefly observed her walking in the direction of her apartment. He was the last known person to see Lauren alive. A security camera located along Lauren's return route did not capture any images of her walking home.

Despite four years of extensive searching, there is no credible information about what happened to Lauren after she left Rosenbaum's apartment. Taking matters into their own hands, Lauren's parents filed this suit, alleging that Rossman, Rosenbaum, and Beth were negligent, both at common law and by Indiana statute, for failing to fulfill their duty to care for Lauren in her incapacitated condition. Additionally, the plaintiffs brought a Dram Shop claim against Rossman and Rosenbaum for furnishing Lauren with alcohol despite knowing that she was intoxicated at the time.

The defendants each filed motions to dismiss and discovery was stayed pending their resolution. The district

court granted Beth's motion and dismissed all claims against him. Also, it dismissed the claims for common law negligence against Rossman and Rosenbaum but denied their respective motions to dismiss the other claims.

After the resolution of the motions to dismiss, the plaintiffs cast a wide net on discovery. To that end, they sought to conduct upwards of fourteen depositions, twelve of them of non-parties, in multiple locations, including New York, Boston, Detroit, and Chicago; they also issued subpoenas for an array of academic, disciplinary, telephone, and other records from various individuals.

After the stay of discovery was lifted but before the parties exchanged initial disclosures, Rosenbaum moved for summary judgment (and was later joined by Rossman) on the grounds that the plaintiffs were unable to offer proof that the defendants were the proximate cause of any verifiable injury to Lauren—disappearance, by itself, is not legally deemed an injury, so proof of some injury was required to support their claims. The defendants also moved to quash the non-party subpoenas and to limit discovery to the issue of proximate cause, that is, to address only evidence related to whether the defendants' actions caused severe injury or death to Lauren.

A series of back-and-forth filings ensued that culminated with the district court upholding the magistrate judge's decision to limit discovery to the issue of proximate causation. Additionally, because the plaintiffs had responded to defendants' summary judgment motions, those motions were deemed ripe for adjudication and the district court granted summary judgment in favor of the defendants.

On appeal, the plaintiffs challenge three rulings: the decision to limit discovery, the grant of summary judgment, and the dismissal of the common law negligence claims. They argue that the summary judgment motions were premature and that the defendants failed to meet their burden to demonstrate the absence of material fact regarding causation. Additionally, the plaintiffs appeal the district court's dismissal of the common law negligence claims, contesting its reading of Indiana law that no duty of care existed and that Lauren did not constitute a child to support a common law claim for loss of services of a child. We review these arguments.

## II. Analysis

At the outset, we analyze two related issues that overlap due to some unique features of this litigation. The first is the decision by the magistrate judge (and adopted by the district judge) to suspend discovery pending the resolution of the summary judgment motions. This is a procedural issue that implicates the scope of a litigant's right to conduct discovery. The second issue involves the actual resolution of the summary judgment motions and the respective burdens carried by the litigants. In short, whether a party can move for summary judgment prior to discovery and whether a party can support its burden absent such discovery are separate inquiries that run together due to particularities of this case.

We review first whether the district court abused its discretion by failing to provide plaintiffs additional time for discovery. *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 885 (7th Cir. 2005). In the absence of a local rule or court order stating otherwise, Rule 56(b) allows a party to move for summary

judgment at any time until 30 days after the close of discovery. No such rule or order exists here, so the defendants acted within their rights to move for summary judgment even though substantial discovery had not occurred. Fed. R. Civ. P. 56(b). But moving for pre-discovery summary judgment does not automatically mean that a court has to entertain the motion. Rule 56(d) allows the non-moving party to submit an affidavit or declaration requesting the court to defer or deny judgment in order to allow for appropriate discovery to address matters raised by the motion. Fed. R. Civ. P. 56(d). Here, the plaintiffs took an unusual course of action: they responded to the motion *and* filed a declaration under Rule 56(d) that included a boilerplate request for discovery without identifying specific evidence needed to respond to defendants' motion. The magistrate judge found the declaration deficient because it was too general to notify the court of any actual evidence needed to respond to the motion. Still more problematic, the declaration, as composed, did not serve as a motion under Rule 56(d) for additional time to respond to the summary judgment motion.

The magistrate judge held a hearing on whether to extend discovery and asked plaintiffs what type of discovery they needed. Plaintiffs' counsel responded: "*We're not asking for anything to respond to summary judgment. We think that we are going to win … on the basis … that* [*the defendants*] *haven't met their burden.*" (Tr. at 24.) Further driving this point home, the plaintiffs argued that they needed extended discovery not to respond to defendants' motions, but in order to file their own motion for summary judgment. (Court: "*But you already told me that you don't need any discovery to respond to*

*their summary judgment motions*?" Plaintiffs' Counsel: "*But I need discovery, Judge, to file my own summary judgment motion.*") (Tr. at 70.)

District courts have broad discretion in directing pretrial discovery and the rulings here were well within this discretion. *Spiegla v. Hull*, 371 F.3d 928, 944 (7th Cir. 2004). The only relevant discovery at issue here is that which might have been available to plaintiffs to respond to the summary judgment motions. The plaintiffs claimed not to need any and we take them at their word. Whatever other types of discovery the plaintiffs might have wanted is not at issue here.

The more pressing issue on appeal is whether the award of summary judgment to defendants was proper—a ruling that we review *de novo*. *Ball v. Kotter*, 723 F.3d 813, 821 (7th Cir. 2013). The standard for summary judgment is well established: with the court drawing all inferences in the light most favorable to the non-moving party, the moving party must discharge its burden of showing that there are no genuine questions of material fact and that he is entitled to judgment as a matter of law. *Chaib v. Indiana*, 744 F.3d 974, 981 (7th Cir. 2014). If the moving party has properly supported his motion, the burden shifts to the non-moving party to come forward with specific facts showing that there is a genuine issue for trial. *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 951 (7th Cir. 2013).

Relying solely on citations to facts alleged in the complaint, the defendants brought their motions with no additional evidence. The plaintiffs are of the belief that summary judgment is impossible unless the moving party first submits evidence to meet their burden of production.

No such evidence having been produced, they claim that the award of summary judgment was wrong as a matter of law. Plaintiffs' argument is almost identical to the one that the Supreme Court rejected in *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the seminal case outlining the respective obligations of the parties in summary judgment motions. Like here, the parties to that dispute contested whether, under Rule 56, the party seeking summary judgment was required to bring evidence in the form of affidavits or other materials to demonstrate the absence of a question about an issue of material fact. *Id.* The Court held that the moving party had no such burden because there existed "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323 (emphasis in original).

In their briefs, the plaintiffs refer repeatedly to the "burden of production" borne by the moving party and we suspect this phrase lies at the heart of their confusion. This phrase is used to signify the respective allocations of evidence that parties must present at a given stage of litigation. *See, e.g., St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Director, Officer of Workers' Compensation Programs, Dept. of Labor v. Greenwich Collieries*, 512 U.S. 267, 272 (1994) (defining the burden of production under the Administrative Procedures Act as "a party's obligation to come forward with evidence to support its claim.").

In *Celotex*, the Court surveyed Rule 56 and found nothing in that rule requiring the moving party to produce evidence. Of course, there can be no "burden of production" absent a

mandate to produce evidence. The actual requirement in Rule 56 is less specific: the moving party need only *inform* the court of the basis for the motion and *identify* supporting materials. *Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (citing Fed. R. Civ. P. 56). That the moving party need not produce evidence does not give them an easy path to summary judgment, it only means that their burden is one of demonstration rather than production.

The text of Rule 56 has been subject to various amendments (in 1987, 2009, and 2010) since the *Celotex* decision was handed down but none of these conflicts with the substance of the ruling in that case. Contrary to plaintiffs' arguments, the only burden of production recognized in Rule 56 falls upon the nonmoving party once a basis for summary judgment has been established (and this can be initiated *sua sponte* by a court under Rule 56(f) with proper notice). The Advisory Committee Notes to the 2010 Amendments state that: "[s]ubdivision (c)(1)(B) [of Rule 56] recognizes that a party need not always point to specific record materials … And a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact." *See also, Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

issue, the nonmoving party bears the burden of production under Rule 56 to designate specific facts showing that there is a genuine issue for trial.") (internal quotation marks omitted).

To be sure, it is a rare case in which a moving party can establish a basis for summary judgment without putting forth some evidence. But such cases exist, as evidenced by the one here. The defendants cited to the pleadings to contend that the plaintiffs would not be able to meet their burden of production at trial to demonstrate a verifiable injury to Lauren that was caused by the defendants' actions and not other intervening factors. Given this set of facts, that was sufficient to meet their burden for summary judgment.

*Dram Shop Act and Negligence Per Se*

To be liable under the Indiana Dram Shop Act, a person must: (1) furnish alcohol to another person; (2) have actual knowledge that the person to whom the alcoholic beverage was furnished was visibly intoxicated at the time; and, (3) the intoxication of the person to whom the alcoholic beverage was furnished must be the proximate cause of the death, injury, or damage alleged in the complaint. I.C. § 7.1-5-10-15.5.

Negligence *per se* (sometimes called "legal negligence") occurs when a violation of a statute or ordinance constitutes negligence as a matter of law. *Erwin v. Roe*, 928 N.E.2d 609, 616 (Ind. Ct. App. 2010) (an "unexcused violation of a statutory duty constitutes negligence *per se* 'if the statute or ordinance is intended to protect the class of persons in which the plaintiff is included and to protect against the risk of the type of harm which has occurred as a result of its violation.'"

(quoting *Kho v. Pennington*, 875 N.E.2d 208, 212 (Ind. 2007)). *Per se* negligence can be distinguished from common law negligence because the former requires proof of violation of a statute or ordinance while the latter does not.

The district court first reviewed these claims on the motions to dismiss which argued that the claims failed because the plaintiffs could not prove that Lauren was injured or deceased. Persons are presumed alive under Indiana law for seven years after their disappearance whereupon a presumption of death might arise from an unexplained absence. *See Roberts v. Wabash Life Ins. Co.*, 410 N.E.2d 1377, 1382 (Ind. Ct. App. 1980); *Prudential Ins. Co. of Am. v. Moore*, 149 N.E. 718, 721 (Ind. 1925). The district court recognized this presumption but noted that a second avenue of proof was available to the plaintiffs: they could use direct or circumstantial evidence to show that the missing person was, in fact, deceased. Significantly, the district court ruled for the plaintiffs for one simple reason—during the pleadings stage of litigation, the court was bound to accept the factual assertion that Lauren had died. The judge noted: "it would be inappropriate for the Court to … make a finding as a matter of law that Lauren is presumed to be alive. The Spierers should be afforded the opportunity to present circumstantial evidence in order to prove that Lauren is deceased … ." App. Ex. at 30–31. This language should have signaled to plaintiffs that they were not likely to survive later stages of litigation merely on the strength of their allegations; sooner or later they would have to put forth evidence, whether direct or circumstantial, demonstrating a discrete injury to Lauren resulting from the actions of the defendants.

Unsurprisingly, the defendants moved immediately for summary judgment in order to revisit the same issue—this time under the more stringent summary judgment standard. They cited to the pleadings to argue that there was no genuine issue of fact that Lauren was missing and therefore there was no evidence to allow a jury to determine what happened to her. Because of this, they claimed that the plaintiffs could not demonstrate proximate cause and their claims must fail.

Instead of requesting discovery to address proximate cause, the plaintiffs argued that they had no burden to produce countervailing evidence because the earlier ruling that Lauren would not be presumed alive had a preclusive effect. (Tr. at 13–14.) They did submit an affidavit from a pharmacologist demonstrating that Lauren suffered that night from diminished mental and physical capacity as a result of her alcohol consumption, but these materials did not address the more relevant question of whether Lauren had suffered a verifiable injury sufficient to support the claims.

Plaintiffs' preclusion argument fails because the district court did not issue a ruling about whether Lauren was alive or not; it merely stated that it treated all of the facts in the complaint as true because it was required to do so on a motion to dismiss. Once the pleadings phase ended, the plaintiffs' facts are no longer taken as true but must be substantiated by evidence if challenged. The pleadings in this case are clear enough—Lauren has been missing since leaving Rosenbaum's apartment that night. The defendants had to do little more than cite to the pleadings to establish this fact. At that point, the burden shifted to the plaintiffs to

provide some evidence that Lauren sustained a distinct injury and that the defendants' actions were the cause of this injury.

The plaintiffs declined to produce evidence to offer any plausible account of what happened to Lauren after she was last seen. For this reason, the district court correctly granted summary judgment because the plaintiffs carried the burden of proving that the defendants (and not other causes) were the proximate cause of any injury to Lauren, and speculation cannot support a finding of proximate cause. Here, the specter of criminal actions by third parties hovers over this tragic case, and this is precisely the type of circumstance which breaks the causal chain under Indiana law. *See Johnson v. Jacobs*, 970 N.E.2d 666, 671 (Ind. Ct. App. 2011) ("A willful, malicious criminal act is an intervening act that breaks the causal chain between the alleged negligence and the resulting harm.").

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007). As it stands, there are no facts to present to a jury to determine the nature of the injury suffered by Lauren. Still more problematic, it remains pure speculation whether any injury was caused by the defendants' actions or the criminal intervention of a third party. For this reason, the district court correctly granted summary judgment. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

*Common Law Negligence*

The district court also dismissed the common law negligence claims against all defendants for failing to state a claim capable of relief. We review these rulings *de novo*. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must state enough facts that, when accepted as true, "state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (discussing Fed. R. Civ. P. 12(b)(6)).

To survive a motion to dismiss, the plaintiffs must allege facts that show that the defendants: (1) owed a duty to Lauren; (2) that they breached that duty; and, (3) that Lauren's death was proximately caused by the breach. *Witmat Dev. Corp. v. Dickerson*, 907 N.E.2d 170, 173 (Ind. Ct. App. 2009). Indiana courts use a three-part balancing test to determine whether a duty exists when it has not been declared or otherwise articulated. *Northern Indiana Public Service Co. v. Sharp*, 790 N.E.2d 462, 465 (Ind. 2003). Specifically, courts consider: the relationship between the parties, the foreseeability of the occurrence, and public policy concerns. *See Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind. 1991).

Opposing the motion to dismiss, the plaintiffs asserted four bases for a duty of care, none of which the district court accepted. On appeal, they narrow their focus to argue that the defendants owed a duty of care to Lauren once they voluntarily undertook to assist her at various points in the evening.

Indiana law recognizes a common law duty of care where "one party assumes such a duty either gratuitously or voluntarily. The assumption of such a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person." *Yost v. Wabash College*, 3 N.E.3d 509, 517 (Ind. 2014) (quotation omitted). Although the existence and extent of an assumed duty is generally a question of fact for the jury, it may be resolved as a matter of law if the designated evidence is insufficient to establish an injury. *See Teitge v. Remy Const. Co. Inc.*, 526 N.E.2d 1008, 1014 (Ind. Ct. App. 1988).

Here, the allegations establish that each defendant tried to assist Lauren in some way and that his assistance was found wanting. The critical question then is whether, as alleged, the assistance provided by the defendants created a legal duty to care for Lauren. Indiana courts have had few occasions to consider this question as the vast majority of assumption-of-duty cases relate to official or business obligations rather than the purely voluntary actions of social peers. The district court found the closest analogues in the cases of *Lather v. Berg*, 519 N.E.2d 755 (Ind. Ct. App. 1988), and *Hawn v. Padgett*, 598 N.E.2d 630 (Ind. Ct. App. 1992), which address whether persons can be held liable for failed attempts to prevent others from driving while drunk.

In *Lather*, a group of teenage friends got drunk together before one announced his intention to drive home. The friends attempted to intervene to the point of taking his keys but relented when the prospective driver became increasingly belligerent; eventually they kicked him out of the house and threw the keys at him. While driving home, the driver engaged police in a high-speed chase before

crashing into a patrol car and killing a police officer. The Indiana Court of Appeals upheld a grant of summary judgment for the defendant on the grounds that a person does not undertake to perform a legal duty owed to another unless he does so *on behalf of* and *in lieu of* that person. *Lather*, 519 N.E.2d at 766. "Liability does not arise in the situation when one undertakes to perform functions coordinate to—or even duplicative of—activities imposed by another by a legal duty, but rather the situation in which one *actually undertakes to perform for the other the legal duty itself.*" *Id.* (emphasis in original but internal quotation omitted). A simpler formulation of this is to say that Indiana courts do not recognize liability unless the actor, by assuming this duty, effectively displaces the other from performing the same action. Because the prospective driver never ceased attempting to regain possession of his keys, the defendant could not be deemed to act *on behalf of* or *in lieu of* the driver.

*Hawn* involved similar facts. A group of friends drank alcohol together at a campsite until late in the evening when one of them sought to leave in his truck to buy cigarettes. The defendants, two female acquaintances, took his keys to prevent him from driving. After they were threatened and physically accosted by the prospective driver, the defendants threw his keys out of their tent. Shortly thereafter, the driver crashed into a tree, killing a passenger who had fallen asleep in the bed of the truck. Recognizing that "Indiana courts have shown great reluctance to require an individual to take any action to control a third party when there is no special relationship between them," the Indiana Court of Appeals held that the defendants were not negligent as there was no

special relationship between the parties. *Hawn* 598 N.E.2d at 634.

The plaintiffs counter with the case of *Buchanan v. Vowell*, 926 N.E.2d 515, 520–21 (Ind. Ct. App. 2010), which also involved drunk driving but with a distinct twist: rather than trying to prevent a drunk person from driving, the defendant in that case sought to aid the drunken person in her driving, with predictably tragic consequences. In this case, a mother and daughter drank alcohol together at a work event to such extent that the daughter was legally intoxicated. Instead of calling a cab, the two hatched a plan whereby each drove her own car home, but with the daughter in a lead car and the mother trailing behind as the two spoke to each other on their cell phones. On the way home, the daughter struck a pedestrian, causing severe injuries.

The Indiana Court of Appeals reversed and held that the mother had assumed a duty of care to prevent the daughter from injuring others when she entered into an agreement with her to make sure she drove home successfully. In so holding, the Court distinguished both *Lather* and *Berg* because the defendants in those cases sought to intervene to prevent tortious behavior while the mother actively sought to encourage it.

While recognizing the dissimilarities between the fact patterns and the one presented here, the analysis in those cases leaves little doubt that Indiana courts would not recognize an assumption of duty in this case. The court in *Hawn* offered the most specific formulation of when a duty of care arises based on one's voluntary actions. Citing to *Sports Inc. v. Gilbert*, 431 N.E.2d 534, 538 (Ind. Ct. App. 1982),

it recognized three factors that frequently accompany an assumption of duty over a third person. They are: (1) where one person is in need of supervision or protection (such as a child, intoxicated person, or business invitee); (2) from someone who is in a superior position to provide it (parent, supplier of alcohol, business owner, hospital) and (3) that person has a right to intervene or control the actions of the other person. *See Hawn*, 598 N.E.2d at 634.

Lauren was in a vulnerable state and therefore in need of protection and the plaintiffs easily satisfy the first factor. But the second factor fails because defendants were classmates of Lauren and not in positions of superiority. While one could argue that, by providing Lauren with alcohol, Rossman and Rosenbaum assumed such responsibility, the courts in *Lather* and *Hawn* declined to impose liability in those cases where a group of social peers provided each other with alcohol. (This contrasts with the holding of *Buchanan*, which recognized the position of superiority of a mother to her daughter.) Additionally, each of the three defendants was apart from Lauren during important parts of the evening; Rossman was not present when Lauren returned to Rosenbaum's apartment, while Rosenbaum and Beth had both parted ways with Lauren hours earlier with no indication that they would see her again that evening. That they express surprise (Beth) and concern (Rosenbaum) when they see her shows that they were not expecting to encounter her at that late hour, still less in that condition. There is simply no case where Indiana courts have recognized responsibility on the part of a person to ensure the safety of intoxicated persons with whom they have unexpectedly come into contact. To recognize a special

relationship based only on these factors would be to greatly expand the class of relationships subject to special duties under Indiana law.

The third factor also favors the defendants. Despite Lauren's visible intoxication, the facts do not establish that defendants had the right or ability to control her movement to such degree as to force her to remain in a certain place. Rossman escorted Lauren to her floor before bringing her to his apartment for reasons that are not clear. From there, Beth attempted to get Lauren to sleep on the couch but was unable to do so for reasons that are also not known. Rosenbaum attempted to arrange transport for Lauren, and it was only after he was unable to do so that Lauren departed. There is no indication that Rosenbaum compelled or even encouraged her to leave his apartment. Despite her diminished capacity, the pleadings demonstrate that Lauren left Rosenbaum's apartment under her own volition and was not encouraged to leave.

Because he was with Lauren the majority of the evening and bought drinks for her, Rossman was nearest to assuming a duty to care for her. But he also appears to have been intoxicated—so much so that it is questionable whether he could effectively take care of himself, still less another person. "Indiana courts have shown great reluctance to require an individual to take any action to control a third party when there is no special relationship between them." *Hawn*, 598 N.E.2d at 633. We have found no decisions under Indiana law where persons were held liable for the actions of their social peers, absent additional factors not present here. To hold otherwise would be to extend the reach of negligence far beyond special relationships and into

virtually all social relationships and situations where a risk of danger might be present.

For these reasons, we agree with the district court that the plaintiffs have failed to state a plausible claim under Indiana law for common law negligence. Because we affirm the dismissal, we need not consider the plaintiffs' claim under Indiana's Child Wrongful Death Statute as that type of claim is functionally identical to one for common law negligence and would fail for the same reasons. *See Ed. Wiersma Trucking Co. v. Pfaff*, 643 N.E.2d 909, 911 (Ind. Ct. App. 1994). Likewise, we need not review the district court's ruling that Lauren's age precluded relief for the loss of services of a child under Indiana law.

### III. Conclusion

For the reasons stated above, the judgment of the district court is AFFIRMED.