**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 9, 2016[*]
Decided November 10, 2016

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 15-2205

| | |
|---|---|
| LEE A. MOMIENT, | Appeal from the United States District |
|     *Plaintiff-Appellant*, | Court for the Northern District of Illinois, |
| | Eastern Division. |
|     *v.* | |
| | No. 13cv2140 |
| NORTHWEST COLLECTORS, INC., | |
|     *Defendant-Appellee.* | James B. Zagel, |
| | *Judge*. |

## O R D E R

Lee Momient brought this action after the defendant, Northwest Collectors, demanded payment on bills from an Evanston, Illinois, hospital. In the lawsuit Momient claims that Northwest's efforts violated federal and state law, but after discovery, and with the company's motion for summary judgment still pending, the district court dismissed the action from the bench. The basis for that decision is unclear; like the parties, we cannot tell if the dismissal rests on the motion for summary judgment or

---

[*] We have unanimously agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. *See* FED. R. APP. P. 34(a)(2)(C).

instead penalizes Momient for a perceived failure to prosecute the lawsuit. Regardless, we conclude that the court erred in dismissing Momient's principal claims, which arise under the Telephone Consumer Protection Act, 47 U.S.C. § 227, and the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692–1692p. We remand those claims for trial.

We start by recounting what Momient alleges in his complaint. At least 40 times between November 2011 and May 2012, Northwest used an automatic dialer to call Momient's cellphone. The bulk of those calls, the complaint alleges, were made without Momient's consent and after he demanded that the calls cease. According to Momient, when he answered the very first call around November 4, he disputed the bills and demanded verification of the debt. He also told the Northwest employee that he did not want the company making any more calls to his cellphone. Following this telephone conversation, Momient expected to receive from Northwest a written communication identifying the creditor and detailing the amounts that Northwest was trying to collect. *See* 15 U.S.C. § 1692g (under FDCPA, debt collector must send, within five days of initial communication to consumer, written notice of creditor's name and amount of debt, unless that information was provided to consumer during initial communication). But more than a week passed without any correspondence from Northwest, so Momient faxed to Northwest a letter disputing the unpaid bills and repeating his earlier demands for verification of the debt and cessation of the calls to his cellphone. Momient sent another letter in February 2012, this time by certified mail, saying the same things. Northwest ignored both letters and continued calling his cellphone, says Momient, so finally in May 2012 he telephoned the company and asked why it continued calling him. The man who fielded this call, who identified himself as Larry Mason, told Momient that he personally opened the envelope sent by certified mail but inside was a blank sheet of paper, not Momient's letter.

Meanwhile, the complaint continues, Northwest had notified the major credit bureaus in December 2011 that Momient's hospital bills were in collection but failed to disclose that he disputed the bills. In February 2012, after learning what Northwest had done, Momient informed the credit bureaus that he disputed the accuracy of Northwest's information. Yet according to Momient, Northwest continued plying the credit bureaus with inaccurate information.

Momient then brought this action against Northwest in May 2013. In addition to his claims under the Telephone Consumer Protection Act and the FDCPA, Momient contended that Northwest had violated the Fair Credit Reporting Act, 15 U.S.C. §§ 1681–1681x, by failing to investigate whether the information that Northwest sent to

the credit bureaus was accurate after it received notice that Momient disputed his debts. He also brought claims under Illinois law for violation of the Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1–505/12, and for intentional infliction of emotional distress and intrusion upon seclusion. (Two other state-law claims have been abandoned on appeal, so we say nothing about them.) During discovery Northwest (after initially defaulting on the lawsuit) served Momient with seven requests to admit, *see* FED. R. CIV. P. 36, and notified him that the company intended to depose him, *see* FED. R. CIV. P. 30. Northwest twice agreed to extensions of Momient's deadline to answer its requests to admit, but still he was two days late. He also resisted being deposed, backing out of four scheduled sittings over an eight-week period and continuing to stall even after the district court had ordered him to cooperate. Northwest asked the court to compel Momient's deposition and also to deem its Rule 36 requests admitted. In April 2014 the court granted that relief but declined the company's further request for fees and costs. The court warned Momient, however, that he faced dismissal if he did not comply with the court's orders.

Momient then was deposed, and afterward Northwest moved for summary judgment on Momient's federal claims. The company principally asserted that, by giving his cellphone number to the hospital, Momient also had given the debt collector "consent to call his cellular phone." But Momient disagreed, saying in a declaration that he had not given his creditors consent to call him on his cellphone *in connection with a debt*. Northwest also maintained that it had sent Momient the written notices required by the FDCPA, but Momient swears in his declaration that he never received any notice from the company, which at summary judgment submitted only blank form letters (lacking a date, Momient's address or even his name, the names of the creditors, and the amounts allegedly owed). Momient never told Northwest in writing to cease communicating with him, the company continued, because inside the envelope sent by certified mail was a blank piece of paper, not his letter. Northwest submitted a photocopy of the envelope and the chief operating officer's unsworn answer to an interrogatory saying he personally had opened the envelope. Momient disputed Northwest's account and, in his declaration, avers that the envelope contained a letter, which he produced during discovery, demanding that Northwest cease calling his cellphone. The claims under the Fair Credit Reporting Act also failed, Northwest asserted, because Momient did not have a private right of action under the statute and because its chief operating officer's affidavit established that Northwest had conducted a reasonable investigation following Momient's disputes. Northwest also argued that Momient did not show that he had any damages, and therefore he could not proceed under the statute. Momient countered that whether Northwest had performed a

reasonable investigation was a material question of fact and stated that he should be allowed to cross-examine a witness with regard to Northwest's procedures.

Northwest also moved for summary judgment on Momient's state-law claims. The company argued that Momient's claims under the Consumer Fraud and Deceptive Business Practices Act lack merit because its practices were not deceptive, and because Momient's admissions further established that he had no damages. Momient simply disagreed with Northwest's contentions and claimed that these were questions for a jury. Momient's claim of intentional infliction of emotional distress must fail, Northwest argued, because calling Momient's cellphone in an effort to collect a debt was not extreme or outrageous behavior. Momient responded that he had alleged this claim adequately in his complaint and thus should be allowed to prove it to a jury. And, finally, Northwest asserted that summary judgment should be granted on Momient's claim for intrusion upon seclusion because, according to the company, Momient had consented to Northwest's calls and he could not show that the calls caused him any anguish. Momient again responded that this claim was adequately pleaded and thus he should be allowed to present it to a jury. He also attested in his declaration that he had suffered the harms alleged in his complaint.

In a December 2014 order, the district court acknowledged that Momient had opposed Northwest's motion with his declaration, but the court "stayed" consideration of the claims now before us. After alluding to Momient's comments about cross-examination and disputes for a jury to resolve, the district court opined that the lawsuit "appears to be going nowhere and must be resolved." The court directed Momient "to appear for a discovery conference at which he must provide the basis for his request to cross-examine non-party producers of documents and witnesses." The court warned that, if Momient could not "appear at the ordered date, he must provide evidence to explain the reason for his failure to appear."

The discovery conference never was scheduled, however, and after four months Momient apparently sent an e-mail to Northwest's attorney asking her advice about getting the case back on track. Counsel responded by filing a motion asking the district court to "enter judgment against Plaintiff pursuant to F.R.C.P. 56" and also to impose sanctions against Momient "for his vexatious and bad faith conduct." Northwest contended, first, that none of Momient's claims could survive summary judgment given the facts he admitted by not timely answering the company's requests to admit. Northwest further asserted that Momient had not "set the discovery conference with the

court" and thus "improperly delayed the resolution of this case." On that basis the company urged the judge to proceed with the pending motion for summary judgment.

Momient did not show at the hearing initially scheduled on that motion. When he did appear after the hearing was rescheduled, the district court did not mention his previous absence. Momient explained in open court that he had thought the judge would schedule the discovery conference and never realized that he was expected to schedule it himself. The court did not contradict that assertion, and neither did counsel for Northwest explain her contention that Momient was responsible for scheduling the conference. Counsel nonetheless explained that she had filed her motion "to lift the stay and to get judgment entered because Mr. Momient took no action" after the court's December 2014 order. Counsel added that the company also had "moved for sanctions in our summary judgment motion." Immediately after these comments from Northwest's lawyer, the district court dismissed the action:

> With respect to the merits of the complaint, it's clear to me that the plaintiff just sat on his rights, filed the complaint, did virtually nothing of any significance, and what he's pleading today is that he wants to start at a point where probably he should have started more than a year ago.
>
> His claim is lost. He failed to pursue it, inflicted costs upon the defendant, and then he just sat there, and finally comes here to court not in response to an effort particular to pursue this case, came to court because I ordered him to come to court.
>
> So the case is dead. . . .

Afterward the court entered a minute order stating that the defendant's "Motion for Judgment" had been granted, that judgment had been entered "on the remaining claims," and that Momient would be given time to address the "Motion for Sanctions."

On appeal Momient contends, and even Northwest concedes, that the basis of the dismissal is unclear. According to Momient, the decision is not defensible either as a sanction for failure to prosecute or as a grant of summary judgment for Northwest. The company counters that the dismissal can be upheld on either ground. We share the parties' uncertainty about why the case was dismissed, but we readily agree with Momient that both of the likely reasons would be erroneous.

To begin, the district court's oral pronouncement cannot justify a dismissal for failure to prosecute. A dismissal on that ground requires a district court to assess, among other factors, the plaintiff's noncompliance with deadlines, the effect of that noncompliance on the court's calendar, prejudice to the defendant, and the merit of the lawsuit. *E.g.*, *Pendell v. City of Peoria*, 799 F.3d 916, 917 (7th Cir. 2015); *Salata v. Weyerhaeuser Co.*, 757 F.3d 695, 699–700 (7th Cir. 2014); *Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 561 (7th Cir. 2011). But we have warned that a dismissal for failure to prosecute "is an extraordinarily harsh sanction that should be used only in extreme situations, when there is a clear record of delay or contumacious conduct, or where other less drastic sanctions have proven unavailing." *Kasalo*, 656 F.3d at 561. And in this case lesser sanctions had been *effective*, not unavailing. The district court had granted Northwest's motions to compel Momient's deposition and deemed admitted all of the company's requests for admission. After those rulings Momient sat for his deposition, participated in discovery, and timely responded to Northwest's motion for summary judgment.

Momient's principal claims are not complicated and depend almost entirely on his own testimony, so we do not understand the district court's criticism that he "did virtually nothing of any significance." As the court observed, litigation inflicts costs on a defendant—both sides, actually—and Momient cannot be faulted for not compounding those costs by taking unnecessary depositions or demanding other tangential discovery. Likewise, we do not understand the district court's belief that a "discovery conference" was necessary to resolve Northwest's motion for summary judgment. We are not surprised that Momient, a pro se litigant, responded to several paragraphs of Northwest's statement of material facts by saying that he disagreed or that he intended to cross-examine the defendant's witnesses; many of those paragraphs lack support from admissible evidence, and as we read his response, Momient was making that point rather than saying he wished to engage in further discovery. Moreover, to the extent that the case languished for several months after the district court unilaterally decided that a discovery conference was needed, Northwest's effort to blame Momient is disingenuous. The company's lawyer stood silently when Momient told the judge that he had sought her advice about getting the case moving, and, regardless, the judge's command that Momient appear "at the ordered date" cannot fairly be understood to mean a date selected by Momient. A district court has the power to manage its own docket, *see Dietz v. Bouldin*, 136 S. Ct. 1885, 1891–92 (2016), and until then the judge had scheduled all status hearings in the litigation. And, finally, although the district court might have been on steadier ground if it had dismissed because Momient missed the first date set to hear

Northwest's motion "for judgment," that absence was never mentioned by the judge. *See Johnson v. Chi. Bd. of Educ.*, 718 F.3d 731, 733 (7th Cir. 2013); *Kasalo*, 656 F.3d at 562.

We thus turn to whether the dismissal can be sustained on the basis of Northwest's motion for summary judgment, which we review de novo. *See Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). As a preliminary matter, Momient contends that the district court abused its discretion in deeming him to have admitted Northwest's requests to admit. Rule 36(a)(3) warns litigants that a "matter is deemed admitted unless" the party responds within the appropriate timeframe, which Momient failed to do even after Northwest twice had agreed to extensions of the deadline. The penalty appears harsh given that Northwest had received Momient's answers even before the next business day after the missed Friday deadline, but we cannot conclude that the district court abused its discretion. *See Simstad v. Scheub*, 816 F.3d 893, 899 (7th Cir. 2016) (explaining that district court may relieve party of deemed admissions if doing so would promote presentation of merits and opposing party would not be prejudiced); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (noting that Rule 36 rulings are reviewed for abuse of discretion); *Walsh v. McCain Foods Ltd.*, 81 F.3d 722, 726 (7th Cir. 1996) (explaining that requests to admit are deemed admitted if not timely answered). Even so, on remand the district court will be free to reconsider this question even though we perceive little harm to Momient from these particular Rule 36 admissions. Five of Northwest's seven requests to admit concern whether the company's conduct prompted Momient to seek psychological treatment, and the seventh asked the uncounseled Momient to admit that he does not seek attorney's fees. Only one request—which asked him to admit that he never told the hospital or treating physicians not to contact him using the number for his cellphone—might seem significant to the motion for summary judgment, and Northwest's contention that this admission defeats all of Momient's claims is frivolous.

Most of those claims do lack merit, but not all. Momient's claims under § 623 of the Fair Credit Reporting Act, *see* 15 U.S.C. § 1681s-2, go nowhere because consumers cannot privately enforce the duty of a "furnisher of information" to give credit bureaus accurate information, *see id*. § 1681s-2(a), *Purcell v. Bank of Am.*, 659 F.3d 622, 623 (7th Cir. 2011), and Momient lacks evidence that Northwest's alleged failure to investigate his accusations that two major credit bureaus were given misinformation caused him any harm, *see* 15 U.S.C. § 1681s-2(b) (defining duties of furnisher of information after receiving notice of dispute); *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005) (implicitly recognizing private right of action if furnisher of information does not conduct reasonable investigation after receiving notice of dispute); *Crabill v. TransUnion,*

*LLC*, 259 F.3d 662, 664 (requiring consumer to show causal relation between violation of statute and alleged harm). Likewise, none of Momient's state-law claims could survive summary judgment. He contends that Northwest violated the Consumer Fraud and Deceptive Business Practices Act by falsely saying that the calls to his cellphone would stop if he made a lawful demand and that the company had received by certified mail only an envelope with a blank sheet inside. But Momient was not fooled by these purported lies, which scotches any claim under this statute. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 861 (Ill. 2005) (explaining that defendant's deception must be proximate cause of harm to plaintiff and that "it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation" (quoting *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151 (Ill. 2002)). Moreover, Momient's tort claims widely miss the mark. Northwest's approximately 40 calls to his cellphone over 6 months cannot satisfy the element of "extreme and outrageous" conduct necessary to incur liability for intentional infliction of emotional distress. *See Swearnigen-El v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 852, 863–64 (7th Cir. 2010) (defining elements of tort); *Pub. Fin. Corp. v. Davis*, 360 N.E.2d 765, 767–68 (Ill. 1976) (concluding that defendant's efforts over several months to collect debt by repeatedly calling, and appearing unannounced at, plaintiff's home and even telephoning her at hospital while daughter was being treated did not constitute extreme and outrageous conduct). And while repeated, unwanted telephone calls might satisfy the "intrusion" element of the tort of intrusion upon seclusion, *Benitez v. KFC Nat. Mgmt. Co.*, 714 N.E.2d 1002, 1006 (Ill. App. Ct. 1999), Momient did not introduce any evidence that he suffered "anguish and suffering" *because of* those calls, *see Cooney v. Chi. Pub. Sch.*, 943 N.E.2d 23, 32 (Ill. App. Ct. 2010) (defining elements of intrusion upon seclusion); *Schmidt v. Ameritech Ill.*, 768 N.E.2d 303, 317 (Ill. App. Ct. 2002) (evaluating whether intrusion was proximate cause of plaintiffs' alleged suffering).

That leaves Momient's claims under the Telephone Consumer Protection Act and the FDCPA, and those claims, we conclude, could not be resolved at summary judgment. The first of these acts prohibits nonconsensual, nonemergency calls to a cellphone using an automatic dialer, 47 U.S.C. § 227(b)(1), and allows recipients of unauthorized calls to recover actual or statutory damages, *id*. § 227(b)(3). *See Soppet v. Enhanced Recovery Co.*, 679 F.3d 637, 639 (7th Cir. 2012). The act requires express consent, 47 U.S.C. § 227(b)(1), and the burden of establishing consent rests with Northwest, *see Soppet*, 679 F.3d at 643; *Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 564–65 (2008).

Whether Northwest had Momient's consent to continue calling his cellphone using an automatic dialer is a material fact that remains in dispute. Northwest introduced evidence that Momient had given the hospital and his treating physicians his cellphone number, and that he also had signed paperwork agreeing to pay their bills. *See Soppet*, 679 F.3d at 643 (noting FCC's opinion that giving cellphone number to creditor constitutes express consent for creditor later to call number regarding debt). Northwest relied, too, on Momient's admission that he "never instructed" the hospital or his doctors in writing "that they were not to contact you on the cell phone number you provided them for the purposes of collections." Additionally, the company introduced a photocopy of the envelope that Momient had sent by certified mail in February 2012 along with the chief operating officer's attestation that he had "learned Plaintiff sent the envelope that was empty." But what the affiant "learned" is hearsay for which no exception has been established, and, beyond that, Momient introduced a copy of his letter and swore that he sent the letter to Northwest. Momient also said under oath that long before this—in November 2011 when the calls started—he told the Northwest employee "not to call my phone." (In his complaint Momient additionally alleged that he also sent a fax demanding that the calls cease, but at summary judgment he did not substantiate this allegation.) So even if Northwest had consent initially, a jury reasonably could find that Momient revoked that consent as early as November 2011 and no later than February 2012—both dates months before the calls stopped.

This discussion carries over to Momient's first claim under the FDCPA. That act similarly allows for actual or statutory damages if a debt collector continues calling a consumer after being asked in writing to stop. 15 U.S.C. §§ 1692c, 1692k; *see Tinsley v. Integrity Fin. Partners*, 634 F.3d 416 (7th Cir. 2011). If a jury believes Momient's evidence that in February 2012 he sent Northwest more than an empty envelope or a blank sheet of paper, then he also will prevail on this theory. Likewise, a jury could find for Momient on his claim that Northwest failed to verify his bills as required by 15 U.S.C. § 1692g. That section of the FDCPA requires that a debt collector, during the initial communication with the consumer or by writing sent within five days of that communication, disclose the amount of the debt, the name of the creditor, and the steps to dispute the debt. *See Sims v. GC Servs. L.P.*, 445 F.3d 959 (7th Cir. 2006); *Avila v. Rubin*, 84 F.3d 222 (7th Cir. 1996). At summary judgment Northwest asserted in its statement of material facts that "in November 2011" it "sent Plaintiff a validation notice for each account in compliance with 15 U.S.C. § 1692g, neither of which was returned undeliverable." Yet the only substantiation offered for this assertion is a pair of blank, undated disclosure forms (which do not name a creditor or specify the amount of a debt) and the chief operating officer's unsworn answer to an interrogatory asserting that

"Defendant" sent validations notices to Momient. Northwest did not produce copies of the notices it purportedly sent, and neither did it say who sent them, where and when they were sent, or how they were "sent." In contrast, Momient swore that he never received § 1692g notices from Northwest, and his declaration is enough to create a fact issue for the jury. *See United States v. Funds in Amount of One Hundred Thousand One Hundred and Twenty Dollars ($100,120)*, 730 F.3d 711, 718 (7th Cir. 2013) (stating that "unsubstantiated, self-serving affidavit testimony can defeat a motion for summary judgment"). These claims must be resolved by a jury.

We have reviewed Momient's remaining contentions, and none has merit. The judgment dismissing Momient's claims under the Telephone Consumer Protection Act and the FDCPA is VACATED, and those claims are REMANDED for trial. In all other respects, the judgment of the district court is AFFIRMED. Circuit Rule 36 will apply on remand.