In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 18-3188

JANICE LARIVIERE,

*Plaintiff-Appellant,*

*v.*

BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY, *et al.*,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Southern District of Illinois.
No. 16-1138-DRH — **David R. Herndon**, *Judge.*

———————————

ARGUED MARCH 27, 2019 — DECIDED JUNE 5, 2019

———————————

Before EASTERBROOK, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Janice LaRiviere is an African-American woman who worked at Southern Illinois University–Edwardsville ("SIUE") for fifteen years. After several conflicts with coworkers, LaRiviere was notified that she would not be reappointed to her position. Immediately afterwards, she was transferred to a new office with less than satisfactory conditions. She sued SIUE and her supervisors.

The district court granted summary judgment for defendants on all claims. Because LaRiviere has not identified evidence that her ethnicity was the reason for her termination or of a causal connection between protected activity and her termination, we affirm.

## I. BACKGROUND

The following facts are undisputed. In 2002, Southern Illinois University–Edwardsville hired Janice LaRiviere on a continuing appointment as an Assistant Director of Building Maintenance. Her time with the Maintenance Department was uneventful until March of 2011, when LaRiviere learned that her supervisor was retiring. She spoke with Kenneth Neher—SIUE's Vice Chancellor for Administration—about becoming the new Director of Facilities Management. She asked if SIUE would waive two requirements: that the position be publicly posted and filled by someone with an engineering degree (which LaRiviere does not have). Neher declined to disregard those requirements and hire LaRiviere.

Instead, Neher hired Paul Fuligni to be the Director of Facilities Management. Fuligni was a (nearly) thirty-year Navy veteran—having served as a civil engineer with supervisory authority over hundreds of employees. Despite his manifest qualifications, LaRiviere believed she had been unfairly passed over. She filed two state court discrimination lawsuits challenging SIUE's hiring decisions. Both were dismissed. The state court dismissed the second lawsuit on August 14, 2014; the appeal ended in July 2015.

Meanwhile, Fuligni hired Donna Meyer to fill a newly created position—Associate Director of the Facilities Department. LaRiviere reported directly to Meyer, who reported to

Fuligni. She resented the management styles adopted by her new supervisors.

Over the next several years, LaRiviere had several conflicts with coworkers. On multiple instances, she refused to sign a Position Description Questionnaire, a document prepared by her supervisor which defined her duties and responsibilities. In April 2013, LaRiviere refused to sign an updated PDQ—prepared by Meyer—because she objected to the new duties and responsibilities outlined within. In early 2016, Meyer gave LaRiviere an updated PDQ which, LaRiviere believed, did not accurately reflect her true duties. Ultimately, she signed the document but also wrote that she was "signing under duress."

The record contains other contentious workplace interactions. During one meeting, LaRiviere referred to a group of architects as "paper pushers" and stated that she should receive a bonus for meeting with all of "these people." In March 2016, LaRiviere submitted sick leave *and* vacation requests for a two-week period. She wasn't ill and tentatively planned to work each of those days. But LaRiviere didn't want to comply with a recently implemented 48-hour notice requirement for leave in the event her plans changed.

Notwithstanding these incidents, Lariviere received positive performance reviews. During her time at SIUE, she received no written reprimands and only one oral reprimand (for refusing to discipline a subordinate employee).

On May 5, 2016, SIUE notified LaRiviere that she would not be reappointed to her position. Pursuant to the applicable personnel policies, that meant her employment would end in a year. The district court found—and LaRiviere doesn't

deny—that employees who have not been reappointed are often transferred to a different office to serve out their term. That's exactly what happened here. After making the decision to not reappoint LaRiviere, Fuligni transferred her to a building located at 420 University Park Drive.

The recently-built University Park building contained both offices and laboratories. Upon relocating, LaRiviere identified a number of deficiencies—including discolored drinking water, high humidity, and a refrigerator with apparently hazardous material (labeled "Student Sheep Brains"). Maintenance addressed all of LaRiviere's concerns, except for the high humidity, within ten days. After LaRiviere's termination, SIUE replaced her with a Caucasian man without a college degree.

LaRiviere brought suit against SIUE, Neher, Fuligni, and Meyer. Her Fourth Amended Complaint advanced claims for discrimination, retaliation, infliction of emotional distress, and breach of contract. At summary judgment, the district court granted judgment for the defendants on all counts. LaRiviere appealed the judgment with respect only to her Title VII discrimination and retaliation claims.

## II. ANALYSIS

We review the district court's summary judgment decision *de novo* and draw all reasonable inferences in LaRiviere's favor. *Burritt v. Ditlefsen*, 807 F.3d 239, 248 (7th Cir. 2015). The movant bears the burden of demonstrating the absence of genuine issues of material fact. *Spierer v. Rossman*, 798 F.3d 502, 507 (7th Cir. 2015). If that occurs, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial." *Id.* Because LaRiviere has raised

only Title VII racial discrimination and retaliation claims on appeal, we limit our analysis to those claims.

The district court analyzed LaRiviere's Title VII claims by inquiring whether she had identified any "direct" or "indirect" evidence. This court has roundly rejected using "disparate methods" to analyze evidence of discrimination. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). Arbitrarily categorizing evidence as "direct" or "indirect" is unhelpful and unnecessarily formalistic. In racial discrimination suits, the question we seek to answer is "[w]hether a reasonable juror could conclude that [the defendant] would have kept h[er] job if [s]he had a different ethnicity, and everything else had remained the same." *Id.* at 764.

Unmistakable evidence of racial animus—racial epithets or explicitly race-motivated treatment—makes for simple analysis. The more complicated cases arise when there is no smoking gun showing intentional discrimination. Then, courts may draw upon the familiar *McDonnell Douglas* burden-shifting framework to determine if triable issues exist. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, LaRiviere has the initial burden of establishing a *prime facie* case of discrimination or retaliation, which involves showing that "(1) she is a member of a protected class, (2) her job performance met [the employer's] legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than the plaintiff." *McKinney v. Office of Sheriff of Whitley Cty.*, 866 F.3d 803, 807 (7th Cir. 2017) (citation omitted).

We begin with discrimination. LaRiviere primarily argues that she suffered an adverse employment action when SIUE reassigned her to a new building. But that part of the *prima facie* case isn't in dispute. Everyone agrees that her termination was adverse, and LaRiviere's transfer to a new office with subpar working conditions seems to be as well. *Vance v. Ball State Univ.*, 646 F.3d 461, 473 (7th Cir. 2011) ("[I]f the challenged action would discourage other employees from complaining about employer conduct that violates Title VII, it constitutes an adverse employment action."). An employee can't sue under Title VII for employment-related mistreatment, however, unless the mistreatment was related to membership in a protected class. And the record provides no support for such a finding.

LaRiviere makes no attempt to argue that coworkers ever made racially derogatory comments to her or others. She doesn't identify appreciable circumstantial evidence of racial animus either. In his deposition, Neher testified that employees who have not been reappointed are commonly transferred to another building to serve out their term. LaRiviere never identified contradictory evidence, nor does she challenge that assertion on appeal. Rather, she merely argues that "[s]imilarly situated white employees were not treated as shabbily as Plaintiff" because "[n]one of the other white managers in Facilities Management were ostracized and forced to join" LaRiviere in the other building. (Appellant's Br. at 18.) That's not enough to create a triable issue. SIU didn't fire any other Facilities managers around this time, and LaRiviere can't create a genuine issue by arguing that "there is no evidence in this case anyone else was terminated at this time but [me]." *Kampmier v. Emeritus Corp.*, 472 F.3d 930, 939 (7th Cir. 2007). Despite the district court's reliance on the obsolete

direct/indirect terminology, the court properly concluded that there were no triable issues of fact.

Her retaliation claim fares no better. LaRiviere argues that SIUE terminated her in retaliation for her prior state court lawsuits against SIUE. But her appeal in the second state court suit ended in July 2015. SIUE didn't make the decision to not reappoint LaRiviere until May 5, 2016, approximately ten months later. In her brief, she admits that "suspicious timing alone" may not support a reasonable inference of retaliation but argues that suspicious timing "together with other facts" may. Appellant's Br. at 16 (citations omitted). She never indicates what those other facts might be. Like with her discrimination claim, the record contains no evidence of SIUE decision-making premised on those state court lawsuits, and there aren't any similarly-situated employees. We've repeatedly held that similar intervals between the protected activity and adverse action are too long to suggest a causal nexus without additional evidence. *See, e.g.*, *Leonard v. E. Illinois Univ.*, 606 F.3d 428, 432 (7th Cir. 2010); *Paluck v. Gooding Rubber Co.*, 221 F.3d 1003, 1010 (7th Cir. 2000). The fact that SIUE decided to terminate LaRiviere ten months after her lawsuit ended does not, by itself, create a triable issue of fact. The district court properly granted judgment for the defendants on the Title VII retaliation claim.

### III. CONCLUSION

LaRiviere did not identify evidence showing that SIUE terminated her because she was a member of a protected class. And there's also insufficient evidence to support her claim that SIUE terminated her employment because she previously filed discrimination lawsuits. For these reasons, we AFFIRM.